[No. F006744. Fifth Dist. June 10, 1987.]

CATALINA PERRY, Plaintiff and Appellant, v.
DAVID K. MEDINA et al., Defendants and Respondents.

604

COUNSEL

Perez, Makasian, Williams & Sanchez and Robert Gray Williams for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Lawrence J. O'Neill and David H. Bent for Defendants and Respondents.

OPINION

BALLANTYNE, J.—

### INTRODUCTION

Appellant Catalina Perry, claiming to be a dependent parent, filed a complaint for the wrongful death of her son against respondent David K. Medina and others. David Medina brought a motion for summary judgment against Catalina Perry. Two other defendants joined the summary judgment motion. (They are not parties on appeal.) The court found that Catalina Perry was not a dependent parent within the meaning of Code of Civil Procedure section 377 and granted the summary judgment.

### FACTS

On May 19, 1984, Pete Perry, decedent, was a passenger in an automobile driven by Salvador Medina and owned by David Medina when it collided with a tractor-trailer rig.

At the time of the accident decedent was in the process of divorcing his wife and had a minor daughter. When decedent left his wife he moved in with his mother, Catalina Perry, for three or four months. While he lived with her he gave her $100 a month for rent. Decedent moved into his own apartment in November of 1983.

After he moved out from Catalina's apartment, decedent would buy $50 worth of groceries twice a month and bring them to his mother. Catalina prepared the food and both she and decedent ate dinner and sometimes breakfast and lunch from the groceries. Although decedent was a big eater and consumed at least one-half of the groceries, Catalina stated that she had a net gain on the groceries but she had no idea what it was. After he moved out, decedent also gave his mother $50 a month to help her save for some surgery. (The testimony was contradictory whether this occurred monthly or only occasionally. ■ We view the evidence in the light most favorable to appellant, as we must upon review of summary judgment.) She spent the money and did not have the surgery.

At the time of her son's death Catalina Perry had an income of $400 per month (SSI and disability). She lived in an apartment with her other son Bill. The rent for the apartment was $200 per month. Bill did not pay rent; he paid the telephone bill and would occasionally buy groceries. Yet, the latter was not done on a regular basis.

## DISCUSSION

### IS THERE A QUESTION OF FACT WHETHER CATALINA PERRY IS A DEPENDENT PARENT WITHIN THE MEANING OF CODE OF CIVIL PROCEDURE SECTION 377?

■ A granting of summary judgment by the trial court will not be reversed on appeal absent an abuse of discretion. (*Brewer* v. *Homeowner's Auto Finance Co.* (1970) 10 Cal.App.3d 337, 341 [89 Cal.Rptr. 231].)
■ The rules for adjudication of a motion for summary judgment are as follows: "[T]he matter to be determined by the trial court on a motion for summary judgment is whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits or declarations in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact. The affidavits of the moving party are strictly construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of

determining facts." (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615], fn. omitted.)

These rules are applied on appeal with all reasonable inferences considered in favor of the party opposing the summary judgment. (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338].)

Code of Civil Procedure section 377 formerly limited wrongful death actions to heirs of the decedent and personal representatives of the decedent suing on the heirs' behalf. In 1968 Code of Civil Procedure section 377 was amended to allow actions to be brought by dependent parents of the decedent. It provided in pertinent part: "When the death of a person not being a minor, or when the death of a minor person who leaves surviving him either a husband or wife or child or children or father or mother, is caused by the wrongful act or neglect of another, his heirs, and his dependent parents, if any, who are not heirs, or personal representatives on their behalf may maintain an action for damages against the person causing the death. . . ."

In 1975, section 377 was amended to include a cause of action for parents dependent on the decedent. It provides: "(a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his or her death, his or her personal representatives. In every action under this section, such damages may be given as under all the circumstances of the case, may be just, but shall not include damages recoverable under Section 573 of the Probate Code. The respective rights of the heirs in any award shall be determined by the court. Any action brought by the personal representatives of the decedent pursuant to the provisions of Section 573 of the Probate Code may be joined with an action arising out of the same wrongful act or neglect brought pursuant to the provisions of this section. If an action be brought pursuant to the provisions of this section and a separate action arising out of the same wrongful act or neglect be brought pursuant to the provisions of Section 573 of the Probate Code, such actions shall be consolidated for trial on the motion of any interested party.

"(b) For the purposes of subdivision (a), 'heirs' means only the following:

"(1) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of Part 2 (commencing with Section 6400) of Division 6 of the Probate Code,

"(2) Whether or not qualified under paragraph (1), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, and parents.... and

"(3) Minors, whether or not qualified under paragraphs (1) or (2), if, at the time of the decedent's death, they resided for the previous 180 days in the decedent's household and were dependent upon the decedent for one-half or more of their support...."

■ Appellant contends that the evidence below was insufficient to establish as a matter of law that she was not dependent upon the decedent within the meaning of Code of Civil Procedure section 377, and thus the summary judgment should be reversed. ■ The parties have correctly agreed that the changes in the language of the statute regarding dependent parents have not affected the meaning of this section and the case of *Hazelwood* v. *Hazelwood* (1976) 57 Cal.App.3d 693 [129 Cal.Rptr. 384], involving the pre-1975 statute, is applicable.

■ Respondent contends that the court correctly decided that the groceries brought to appellant's home and eaten by the decedent had no effect on appellant's circumstances. The $50 payments made to appellant by the decedent were not sufficient to establish financial dependency. Respondent argues that if any financial contribution by a child to a parent renders the parent dependent within the meaning of Code of Civil Procedure section 377, then the section would be meaningless because almost anyone could meet the criteria. Respondent asserts that there was no showing that the money provided by decedent had any effect on appellant's ability to meet her financial obligations.

Although it was argued below that the term "dependent" as used in Code of Civil Procedure section 377 encompassed emotional dependency as well as financial dependency, it appears that appellant has abandoned this premise on appeal. The term "dependent" would be rendered virtually meaningless if emotional dependency was sufficient to sue for wrongful death. Almost all parents depend on their children for emotional satisfaction and are injured by the death of their child. The floodgates would be opened by this interpretation. ■ Financial dependency should be the test for parents who are not heirs of the decedent. However, once financial dependency is shown, then the parent may recover "for the loss of that child's comfort and society, and subsequent protections which the child may afford to the parent, provided these elements are considered in reasonable relation to pecuniary loss." (*Riley* v. *California Erectors, Inc.* (1973) 36 Cal.App.3d 29, 32 [111 Cal.Rptr. 459, 69 A.L.R.3d 1033].)

In *Hazelwood* v. *Hazelwood, supra,* 57 Cal.App.3d 693, the parents filed an action for damages for the wrongful death of their son claiming to be dependent parents within the meaning of Code of Civil Procedure section 377. The post-1968 and pre-1975 statute was applicable to their case. "The trial court found, on substantial evidence, that decedent did not, during his lifetime, contribute to the support of appellants; that appellants, at the time of decedent's death, were not disabled, were both gainfully employed and were self-supporting. It concluded that, as a matter of law, appellants were not dependent parents of decedent within the meaning of section 377." (*Id.* at p. 696.) Appellants argued that the term "dependent parents" encompassed more than actual financial dependency and included "reliance upon decedent for comfort and affection and for support and pecuniary advantages to which they might be entitled in the future." (*Id.* at p. 697.) The court held that the term " 'dependent parents' as it was used in Code of Civil Procedure section 377 means parents who, at the time of the child's death, were actually dependent, to some extent, upon the decedent for the necessaries of life." (*Id.* at p. 698.)

In *Evans* v. *Shanklin* (1936) 16 Cal.App.2d 358 [60 P.2d 554], a mother sought to recover damages for the wrongful death of her son. The decedent was married and had two adult children at the time of his death and so the mother was not an heir. (*Id.* at p. 359.) The mother was poor and unable to provide for herself. The decedent for years before and at the time of his death had provided generous support and maintenance to his mother. It was held that the mother could not sue because she was not an heir of the decedent.

"Though we might feel that considerations of social security and social justice should dictate that a mother situated as was the plaintiff mother here, living with and dependent upon her son for support and maintenance, remembering the son's separation from the latter's wife, coupled with his legal obligation during his lifetime under the provisions of section 206 of the Civil Code to maintain his mother, should have a right to bring an action for damages occasioned by the wrongful death of her son; nevertheless, the decision of the legislature as to how far it will extend the right is conclusive, unless it appears beyond rational doubt that an arbitrary discrimination between persons or classes similarly situated has been made without any reasonable cause therefor. [Citations.] ... The remedy for extending the right of action to the mother under the facts and circumstances of this case must come from the legislature." (*Id.* at pp. 362-363.)

■ The legislation including dependent parents within the class of persons who can sue for wrongful death was enacted to remedy the type of situation the court found in *Evans*. (The Legislature responded to the same

type of situation found in *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204], when it included dependent stepchildren within the class of persons who may maintain an action for wrongful death.)

■ Dependency should be determined on a case-by-case basis. No strict formula can be applied nor did the Legislature suggest a formula as it did in subdivision (b)(3) of Code of Civil Procedure section 377. The *Hazelwood* v. *Hazelwood, supra,* 57 Cal.App.3d 693 test is a good one and should apply. The parents must show that they "were *actually* dependent, to some extent, upon the decedent for the *necessaries* of life." (*Id.* at p. 698, italics added.) Thus a parent cannot claim they are dependent within the meaning of Code of Civil Procedure section 377 if they receive financial support from their children which merely makes available to them some of the niceties of life they might not otherwise be able to afford. But, if a parent receives financial support from their child which aids them in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without, the parent is dependent upon their child. The death of that child in this type of situation results in a distinct pecuniary loss to the parent which requires the parent to find aid elsewhere for the basic things we all need. Public policy supports the *Hazelwood* test. Civil Code section 206 provides: "It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding. A person who is receiving aid to the aged shall be deemed to be a person in need who is unable to maintain himself by work."

■ It is public policy that family take care of family when possible. Someone who causes the wrongful death of a child who provides the necessaries of life to his or her parent has deprived that parent of support which he or she depended upon and should be responsible for compensating that loss.

■ Appellant lived on a meager $400 a month. Decedent brought her $100 worth of groceries a month. They both ate from the groceries he brought. After he moved out of the apartment and stopped paying $100 a month in rent, decedent gave her $50 a month in addition to the groceries. Although in this day and time $50 a month and some food to eat may seem like a very small amount, its value is greatly increased when viewed in the perspective that appellant lived on $400 a month, $200 of which paid her rent. Considering all reasonable inferences in favor of appellant, there was a factual question whether appellant was dependent on decedent at the time of his death.

The judgment is reversed.

Hamlin, Acting P. J., and Martin, J., concurred.