[No. H020339. Sixth Dist. Aug. 31, 2001.]

JOSE CHAVEZ et al., Plaintiffs and Appellants, v.
GARY ARTHUR CARPENTER, Defendant and Respondent.

## Counsel

John Kevin Crowley for Plaintiffs and Appellants.

Sky, Ebey, Farrar & Howell, Grunsky, Ebey, Farrar & Howell, Dennis P. Howell and Leslie J. Karst for Defendant and Respondent.

## Opinion

**WUNDERLICH, J.**—Appellants Jose and Elsa Chavez brought this civil action for the wrongful death of their adult son, who was killed by a drunk driver. The trial court granted the defendant's motion for summary adjudication on the ground that appellants lacked standing to sue for their son's death. Because we conclude that there are triable issues of material fact on the question of appellants' standing, we reverse the judgment.

### Facts

Decedent Altie Chavez was the 24-year-old son of appellants Jose and Elsa Chavez. Before his death, decedent lived with appellants, contributing money and services to the household. Though unmarried, decedent had a daughter, Jazmyne Noel Garcia.

On August 24, 1996, decedent was killed in an automobile collision caused by defendant Gary Arthur Carpenter, who was driving while intoxicated. Defendant was later convicted of felony manslaughter in connection with the fatal crash.

Decedent was survived both by his parents and by his daughter Jazmyne, then two years old. In September 1996, the month after decedent's death, the daughter herself was killed in an unrelated automobile accident.

### Procedural History

This civil action was filed in May 1997.[1] The complaint included causes of action for negligence and for decedent's wrongful death. The action was brought by appellants, suing both as individuals and as the personal representatives of decedent's estate, and by Jazmyne's mother, Maria Garcia, suing as the successor in interest to the child's estate.

---

[1] There was a second civil action against defendant arising out of the August 1996 crash that killed decedent. That action was brought by Imelda Munoz, a passenger in decedent's car who was injured in the crash. In March 1998, Munoz's action was consolidated with this case. Munoz later settled her action against defendant and she is not a party to this appeal.

In September 1997, defendant moved for summary adjudication of appellants' wrongful death claim on the ground that appellants lacked standing. Appellants opposed defendant's motion, arguing that they had statutory standing to sue both as decedent's heirs, since he left no surviving issue, and as parents dependent on his support. The trial court, unpersuaded by appellants' arguments, granted defendant's motion for summary adjudication in October 1997. Appellants attempted to appeal the grant of summary adjudication, but that appeal was dismissed as being from a nonappealable order.

Thereafter, the parties settled all the remaining claims in the action. Stipulated judgment was entered June 4, 1999. This timely appeal followed.

## ISSUES

The question before us is whether appellants have standing to sue for their son's wrongful death on either of two statutory grounds. Appellants first assert standing as their son's heirs, based on their contention that he left no surviving issue. Alternatively, appellants claim the right to sue as dependent parents. As to that ground, appellants argue that there are material factual disputes concerning the extent to which they relied on their son's support.

## APPEALABILITY

■ Neither party has challenged the appealability of the judgment. "Nonetheless, since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720].) We perceive two possible obstacles to appealability in this case: lack of finality and consent.

*Finality.* A judgment that fails to dispose of all claims between the litigants is not a final, appealable judgment under Code of Civil Procedure, section 904.1, subdivision (a). "[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143].)

In this case, the appellate record as initially lodged did not adequately demonstrate that all claims of all parties in the two consolidated actions had been finally resolved. We therefore sought additional briefing from the parties on that issue. In response, appellants moved to augment the record with the dismissals filed in each of the two consolidated actions. Having

granted appellants' motion to augment the record, we conclude that the dismissals and the judgment, taken together, dispose of all claims in both actions.

*Consent.*

As a general proposition, a party may not appeal a consent judgment. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399-400 [87 Cal.Rptr.2d 453, 981 P.2d 79].) "Parties cannot create by stipulation appellate jurisdiction where none otherwise exists." (*Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 118-119 [61 Cal.Rptr.2d 370], fn. omitted.) But there is an exception for cases in which consent was given solely " ' "to facilitate an appeal following adverse determination of a critical issue." ' [Citation.]" (*Norgart v. Upjohn Co., supra,* 21 Cal.4th at p. 400.) This is such a case. Here, it is apparent from the stipulated judgment that the parties did not intend "to settle their dispute fully and finally, but merely to hasten its transfer from the superior court to the Court of Appeal." (*Id.* at p. 401.)

We are satisfied that the stipulated judgment before us is appealable.

## STANDARD OF REVIEW

■ This case comes to us following summary adjudication. Since summary judgment involves pure matters of law, we review a grant of summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Barton v. Elexsys Internat., Inc.* (1998) 62 Cal.App.4th 1182, 1187 [73 Cal.Rptr.2d 212].) In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 886-887 [41 Cal.Rptr.2d 740].)

## DISCUSSION

■ The right to sue for wrongful death did not exist at common law. (*Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801, 807 [62 Cal.Rptr.2d 78].) "Because it is a creature of statute, the cause of action for wrongful death 'exists only so far and in favor of such person as the legislative power may declare.' [Citation.]" (*Justus v. Atchison* (1977) 19 Cal.3d 564, 575 [139

Cal.Rptr. 97, 565 P.2d 122], disapproved on other grounds in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].) The Legislature "both created and limited the remedy." (*Justus v. Atchison, supra,* 19 Cal.3d at p. 572.)

California first enacted a wrongful death statute in 1862. (Stats. 1862, ch. 330, §§ 1-4, pp. 447-448.) In 1872, the statute was codified as former section 377 of the Code of Civil Procedure. (See Historical Note, 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 377, pp. 60-61.) In 1992, the Legislature repealed former section 377 and enacted the current wrongful death statute. (Stats. 1992, ch. 178, § 20, p. 890; Cal. Law Revision Com. com., reprinted at 14 West's Ann. Code Civ. Proc. (2001 supp.) foll. § 377, p. 23; see now Code Civ. Proc., §§ 377.60 to 377.62.)

Standing in wrongful death actions is now governed by Code of Civil Procedure Section 377.60.[2] As relevant here, that statute permits a cause of action for wrongful death to be asserted by: "(a) The decedent's surviving spouse, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse, who would be entitled to the property of the decedent by intestate succession. [¶] (b) Whether or not qualified under subdivision (a), if they were dependent

---

[2]Section 377.60 provides in its entirety as follows:
"A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
"(a) The decedent's surviving spouse, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse, who would be entitled to the property of the decedent by intestate succession.
"(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.
"(c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support.
"(d) This section applies to any cause of action arising on or after January 1, 1993.
"(e) The addition of this section by Chapter 178 of the Statutes of 1992 was not intended to adversely affect the standing of any party having standing under prior law, and the standing of parties governed by that version of this section as added by Chapter 178 of the Statutes of 1992 shall be the same as specified herein as amended by Chapter 563 of the Statutes of 1996."
Section 377.60 was enacted in 1992 and amended in 1996 and 1997. As relevant here, the 1992 legislation continued the predecessor statute without substantive change. (See Cal. Law Revision Com. com., reprinted at 14 West's Ann. Code, *supra,* foll. § 377.60, p. 52.) The 1996 amendment added clarifying language to subdivision (a). The 1997 amendment added subdivisions (d) and (e) to the statute. (See Historical and Statutory Notes, 14 West's Ann. Code Civ. Proc., *supra,* foll. § 377.60, p. 52.)

on the decedent, the putative spouse, children of the putative spouse, step-children, or parents."

Appellants claim standing both under Code of Civil Procedure section 377.60, subdivision (a), as heirs, and under subdivision (b), as dependent parents.

### 1. *Appellants' Standing as Heirs.*

■ The first subdivision of the wrongful death statute gives standing to those persons "who would be entitled to the property of the decedent by intestate succession," but only "if there is no surviving issue of the decedent." (Code Civ. Proc., § 377.60, subd. (a).) Under the laws of intestate succession, a decedent's parents become heirs where there is no surviving issue. (Prob. Code, § 6402, subd. (b).) But where a decedent leaves issue, "his parents would not be his heirs at all [citations] and therefore not entitled to maintain this [wrongful death] action at all." (*Jolley v. Clemens* (1938) 28 Cal.App.2d 55, 74 [82 P.2d 51] [decided under predecessor statute]; accord, *Coats v. K-Mart Corp.* (1989) 215 Cal.App.3d 961, 969 [264 Cal.Rptr. 12] [same]; *Gabehart v. Simonsen* (1986) 176 Cal.App.3d 672, 675 [222 Cal.Rptr. 336] [same].)

The question before us is whether Jazmyne was decedent's surviving issue. If so, she is the only proper plaintiff under this subdivision. If not, appellants are proper plaintiffs, with standing to sue for their son's wrongful death.

In resolving that question, we first note that there is no dispute that decedent fathered Jazmyne. A default judgment of paternity was entered against decedent. He paid child support for the girl. And despite references in the parties' briefs to the lack of confirmation of decedent's paternity through blood testing, appellants do not dispute that Jazmyne was their son's "issue." (See Prob. Code, §§ 50, 21115; *Cheyanna M. v. A.C. Nielsen Co.* (1998) 66 Cal.App.4th 855, 866-867 [78 Cal.Rptr.2d 335]; cf. *Gabehart v. Simonsen, supra,* 176 Cal.App.3d at p. 677.)

Although appellants concede that Jazmyne was decedent's child, they dispute that she survived him. Since the facts underlying that dispute are uncontroverted, it presents a question of law for our independent determination. (Cf. *Schrader v. Scott* (1992) 8 Cal.App.4th 1679, 1684 [11 Cal.Rptr.2d 433].)

To answer the question whether Jazmyne survived her father for purposes of the wrongful death standing statute, we first look to the statute itself. We

observe that neither the standing provision itself nor the chapter in which it is codified explicitly defines the term "surviving." (See Code Civ. Proc., ch. 4, tit. 3, pt. 2, § 377.10 et seq.)

Lacking an explicit statutory definition, we "give to the words of the statute their ordinary, everyday meaning . . . ." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298], citations omitted.) In ordinary usage, "surviving" means "[r]emaining alive." (See Black's Law Dict. (7th ed. 1999) p. 1459; accord, Webster's 3d New Internat. Dict. (1993) p. 2303.) A "survivor" is "[o]ne who outlives another." (Black's Law Dict., *supra,* p. 1459, col. 2.) Employing that common definition here, we conclude that "surviving" issue are those who outlive the decedent.

Our conclusion is bolstered by a related statutory provision concerning survival, which is found in the Probate Code.[3] That provision indirectly defines a "surviving" intestate heir by requiring that the survivor outlive the decedent by 120 hours in order to take by intestacy. (Prob. Code, § 6403, subd. (a).) Those who fail to survive for the statutory period are deemed to have predeceased the decedent. (*Ibid.*)

In this case, Jazmyne outlived her father by more than 120 hours.[4] She thus would qualify as his surviving child both under the common dictionary definition, which we adopt here, and under the Probate Code's survival

---

[3]Resort to the Probate Code is appropriate here, because many provisions of the two codes interrelate. (See Revised Recommendation Relating to Annual Rep. for 1992, Litigation Involving Decedents (Apr. 1992) 22 Cal. Law Revision Com. Rep. (1992) p. 899, fns. 3-4; *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 665 [224 Cal.Rptr. 688, 715 P.2d 648].) In fact, at least one Probate Code provision—section 258— expressly affects wrongful death standing. It provides: "A person who feloniously and intentionally kills the decedent is not entitled to bring an action for wrongful death of the decedent or to benefit from the action brought by the decedent's personal representative. The persons who may bring an action for wrongful death of the decedent and to benefit from the action are determined as if the killer had predeceased the decedent." (Prob. Code, § 258.) Although section 258 obviously does not apply here, it underscores the propriety of considering related Probate Code provisions when construing the wrongful death standing statute, particularly those provisions that dictate whether a person is deemed to have predeceased a decedent.

[4]The evidentiary record does not make clear exactly when Jazmyne died. According to the unverified complaint, Jazmyne died on September 29, 1996, a fact confirmed by defendant's counsel at oral argument. The evidence in the record indicates only that the child died sometime in September 1996. Whatever the exact date of Jazmyne's death, it is clear that she outlived her father by at least 120 hours, given that he died more than five days before the end of the preceding month.

provision.[5] We therefore conclude that Jazmyne is decedent's survivor, a status that forecloses appellants' standing as heirs. (*Jolley v. Clemens, supra,* 28 Cal.App.2d at p. 74; *Coats v. K-Mart Corp., supra,* 215 Cal.App.3d at p. 969; *Gabehart v. Simonsen, supra,* 176 Cal.App.3d at p. 675.)

Appellants earnestly resist that conclusion on several grounds.

They first argue that the language and history of the 1992 amendments to the wrongful death standing statute demonstrate the Legislature's intent to expand the class of potential plaintiffs beyond intestate heirs. We disagree with appellants' view of the Legislature's intent in amending section 377.60.[6] But even if we assume that the Legislature did intend to expand the class of potential wrongful death plaintiffs, appellants would not be in that class. Under the express terms of the statute, parents have standing to sue only "if there is no surviving issue of the decedent." (Code Civ. Proc., § 377.60, subd. (a); cf. *Jolley v. Clemens, supra,* 28 Cal.App.2d at p. 74; *Coats v. K-Mart Corp., supra,* 215 Cal.App.3d at p. 969.) As we have explained, the decedent in this case left a surviving daughter.

Appellants also urge their standing as a matter of policy, arguing that their right to sue must be recognized in order to avoid "extinguishing" defendant's liability. We acknowledge that Jazmyne's recovery for the wrongful death of her father will be diminished—though not precluded—by her own untimely death. We further acknowledge that defendant may reap an undeserved windfall as a result. (Cf. *Lewis v. Regional Center of the East Bay* (1985) 174 Cal.App.3d 350, 356 [220 Cal.Rptr. 89] (dis. opn. of Low, P. J.).) But we are not at liberty to base our decision in this case on considerations of policy. As we have stressed above, wrongful death actions are creatures of

---

[5]Given the facts of this case, we need not and do not decide whether the Legislature intended to incorporate the 120-hour survival requirement of Probate Code section 6403, subdivision (a) into Code of Civil Procedure section 377.60.

[6]The 1992 amendments to the wrongful death statute were proposed in order to address two specific concerns raised by earlier judicial decisions. (See Revised Recommendation Relating to Annual Rep. for 1992, Standing to Sue for Wrongful Death (Apr. 1992) 22 Cal. Law Revision Com. Rep., *supra,* pp. 955-961.) First, the proposed amendments codified one case, which held that a decedent's issue enjoyed wrongful death standing even where there is a surviving spouse. (See *Fiske v. Wilkie* (1945) 67 Cal.App.2d 440 [154 P.2d 725] [codified by the 1992 legislation]; see Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra,* foll. § 377.60, p. 52.) Second, the proposed legislation overruled another decision, thereby ensuring that an heir who intentionally killed the decedent was disqualified from asserting a wrongful death claim. (See *Marks v. Lyerla* (1991) 1 Cal.App.4th 556 [2 Cal.Rptr.2d 63], overturned by the 1992 legislation; see Cal. Law Revision Com. com., 14 West's Ann.Code Civ. Proc., *supra,* foll. § 377.60, p. 52.) Although the practical effect of these amendments may have been to expand the class of persons with standing to sue for wrongful death, expansion was not the Legislature's apparent purpose in amending the statute. (See *Cheyanna M. v. A.C. Nielsen Co., supra,* 66 Cal.App.4th at pp. 863-864.)

statute. (*Justus v. Atchison, supra,* 19 Cal.3d at p. 575.) For that reason, "the cause of action for wrongful death 'exists only so far and in favor of such person as the legislative power may declare.' [Citation.]" (*Ibid.*) Whatever our perceptions of the equities in this case, we are powerless to recognize standing that does not exist under the statute. (*Lewis v. Regional Center of the East Bay, supra,* 174 Cal.App.3d at p. 355.)

Finally, appellants insist that the question of Jazmyne's survival, and thus of her standing to sue, must be determined as of the date she files suit. We disagree. As we explain below, the child's status as a survivor and her consequent right to sue do not depend on whether or when an action was filed on her behalf. Rather, the pivotal question is whether she owned a cause of action for her father's wrongful death at the time she died, and, if so, whether that cause of action survived her.

*Wrongful death cause of action.* A claimant's cause of action for wrongful death arises when the decedent dies. (*Arizmendi v. System Leasing Corp.* (1971) 15 Cal.App.3d 730, 736 [93 Cal.Rptr. 411]; cf. *Ferguson v. Dragul* (1986) 187 Cal.App.3d 702, 708-709 [232 Cal.Rptr. 79].) As decedent's child, Jazmyne had a claim for his wrongful death. (*Arizmendi v. System Leasing Corp., supra,* 15 Cal.App.3d at pp. 736-737.) Jazmyne was alive at the time of her father's death. (Cf. *Cheyanna M. v. A.C. Nielsen Co., supra,* 66 Cal.App.4th at pp. 863-864.) Jazmyne therefore owned a cause of action for her father's wrongful death before she died.

Appellants contend that "Jazmyne's claim did not survive her death because it never ripened into a right to sue before her death." We reject that contention. In some cases, even rights that "have not yet ripened into an actionable claim" may give rise to a survival action. (*Carr v. Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 890 [199 Cal.Rptr. 835].) And in this case, as we have just explained, Jazmyne's right to sue for her father's wrongful death had fully ripened into a viable cause of action before she died.

*Survival of the claim.*

Under California's survival statute, Jazmyne's claim for her father's wrongful death survived her own death. The survival statute is codified at Code of Civil Procedure, section 377.20. It reads in pertinent part as follows: "Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." (Code Civ. Proc., § 377.20, subd. (a). On the survival of claims generally, see *County of Los Angeles v. Superior Court*

(1999) 21 Cal.4th 292, 295-296 [87 Cal.Rptr.2d 441, 981 P.2d 68]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 64-67, pp. 121-126; *id.*, (2001 supp.) p. 16; 12 Witkin, Summary of Cal. Law (2001 supp.) Wills and Probate, §§ 493A-493D, pp. 155-162.)

Wrongful death claims are among the causes of action that survive. It is well settled that "an action for wrongful death survives the plaintiff heir." (*Johnson v. Key System Transit Lines* (1962) 210 Cal.App.2d 440, 440 [26 Cal.Rptr. 574].) Furthermore, as we confirm here, not only does such an *action* survive the plaintiff's death, but a *cause of action* for wrongful death survives as well. That conclusion is compelled, in the first instance, by the survival statute's explicit reference to a party's "cause of action." (Code Civ. Proc., § 377.20, subd. (a) ["a cause of action . . . survives"].) That conclusion is further bolstered by a related provision that expressly permits commencement of an action after the party-plaintiff's death. (See Code Civ. Proc., § 377.30 ["A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."].) It is apparent from these provisions that the statutory scheme is concerned with survival of the plaintiff's *claim*, not merely with survival of any ensuing action on that claim. Put another way: "The statute contains nothing to suggest that survival is dependent upon the injured person's having filed suit before death." (*Dunwoody v. Trapnell* (1975) 47 Cal.App.3d 367, 370 [120 Cal.Rptr. 859] [decided under former Prob. Code, § 573; see now Code Civ. Proc. § 377.20].) To the contrary, the statutory language makes clear that a wrongful death action need not be filed before the plaintiff's death in order for the plaintiff's cause of action to survive.

Applying those principles to this case, we conclude that Jazmyne had a viable cause of action for her father's wrongful death before she died. That cause of action survived her. Her failure to file suit before her own untimely death does not divest her of her wrongful death claim or of her standing to sue on that claim.

In sum, for purposes of the wrongful death standing statute, Jazmyne is decedent's surviving child. As a result, Jazmyne's successor in interest has standing to sue on her behalf. As a further result, appellants lack standing to sue as decedent's heirs under Code of Civil Procedure section 377.60, subdivision (a).

Having rejected appellants' contention that they may sue as decedent's heirs, we now turn to their alternative argument for standing as dependent parents.

## 2. *Appellants' Standing as Dependent Parents.*

Regardless of their status as heirs, parents may sue for the wrongful death of their child "if they were dependent on the decedent." (Code Civ. Proc., § 377.60, subd. (b).)[7] For purposes of this subdivision, dependence refers to financial support. (*Hazelwood v. Hazelwood* (1976) 57 Cal.App.3d 693, 697-698 [129 Cal.Rptr. 384][interpreting the predecessor statute]; *Perry v. Medina, supra,* 192 Cal.App.3d at p. 608 [same].) "The term 'dependent' would be rendered virtually meaningless if emotional dependency was sufficient to sue for wrongful death. Almost all parents depend on their children for emotional satisfaction and are injured by the death of their child. The floodgates would be opened by this interpretation. Financial dependency should be the test for parents who are not heirs of the decedent." (*Perry v. Medina, supra,* 192 Cal.App.3d at p. 608.)[8]

Financial dependence generally presents a question of fact, which "should be determined on a case-by-case basis." (*Perry v. Medina, supra,* 192

---

[7]As relevant here, this subdivision carries forward the substance of the predecessor statute. (See Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra,* foll. § 377.60, p. 52 [With exceptions that do not apply to this case, "Section 377.60 restates subdivision (b) and the first part of the first sentence of subdivision (a) of former Section 377 without substantive change . . . ."].) The version of former section 377, effective prior to 1975, permitted wrongful death actions by the decedent's "heirs, and his dependent parents, if any, who are not heirs . . . ." (Former Code Civ. Proc., § 377, as amended by Stats. 1968, ch. 766, § 1, p. 1488.) As amended in 1975, that section defined heirs to include parents, "if they were dependent on the decedent . . . ." (Former Code Civ. Proc., § 377, subd. (b)(2), as amended by Stats. 1975, ch. 1241, § 5.5, p. 3189.) The differences in terminology between the two versions of the former statute were not substantive. (*Perry v. Medina* (1987) 192 Cal.App.3d 603, 608 [237 Cal.Rptr. 532]; *Flanagan v. McDonnell Douglas Corp.* (C.D.Cal. 1977) 428 F.Supp. 770, 775.) Likewise, as noted above, the differences between the former statutes and the subdivision as currently enacted are not substantive. (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra,* foll. § 377.60, p. 52.) The changes in statutory language thus do not affect our analysis here.

[8]We agree that financial dependence is the proper test. But we do not agree with defendant that the proper measure of dependence is found in Family Code section 4400. That provision requires an adult child to "support a parent who is in need and unable to maintain himself or herself by work." (Fam. Code, § 4400.) We are not persuaded by defendant's assertion that "the support envisioned under [Family Code section] 4400 . . . is the same as that under the wrongful death statute, i.e., for the 'necessities of life.' " Family Code section 4400 may indeed share some policy considerations in common with the wrongful death statute. (*Perry v. Medina, supra,* 192 Cal.App.3d at p. 610.) But the policies behind the two statutes are not entirely congruent. The main purpose of Family Code section 4400 is to keep indigents from becoming public charges. (*Gluckman v. Gaines* (1968) 266 Cal.App.2d 52, 54 [71 Cal.Rptr. 795] [interpreting predecessor statute, Civ. Code, § 206].) By contrast, the purpose behind Code of Civil Procedure section 377.60 is to compensate tort victims. (*Lewis v. Regional Center of the East Bay, supra,* 174 Cal.App.3d at p. 354.) More importantly, in our view the two statutes envision different support thresholds. The Family Code provision compels support for parents "in need" who are "unable" to maintain themselves. (Fam. Code, § 4400; *Gluckman v. Gaines, supra,* 266 Cal.App.2d at pp. 54, 58 [father was 86 years old and "infirm"]; *Janes v. Edwards* (1935) 4 Cal.App.2d 611, 612 [41 P.2d 370] [mother was "unable

Cal.App.3d at p. 610.) "No strict formula can be applied nor did the Legislature suggest a formula . . . ." (*Ibid.*) Nevertheless, some principles have emerged from the few published cases that construe the relevant portion of the statute.

In the earliest such case, the First District Court of Appeal held "that the term 'dependent parents' . . . means parents who, at the time of a child's death, were actually dependent, to some extent, upon the decedent for the necessaries of life." (*Hazelwood v. Hazelwood, supra,* 57 Cal.App.3d at p. 698.) A later decision rendered by the Fifth District Court of Appeal endorsed and extended the holding in *Hazelwood.* (*Perry v. Medina, supra,* 192 Cal.App.3d at p. 610.) In that case, the court concluded that "a parent cannot claim they are dependent within the meaning of Code of Civil Procedure section 377 if they receive financial support from their children which merely makes available to them some of the niceties of life they might not otherwise be able to afford. But, if a parent receives financial support from their child which aids them in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without, the parent is dependent upon their child. The death of that child in this type of situation results in a distinct pecuniary loss to the parent which requires the parent to find aid elsewhere for the basic things we all need." (*Ibid.*)

After setting forth its test for dependency, the court in *Perry v. Medina* applied that test to the facts before it.[9] There, the appellant was a mother claiming status as a dependent parent. She "lived on a meager $400 a month. Decedent brought her $100 worth of groceries a month. They both ate from the groceries he brought. After he moved out of the apartment and stopped paying $100 a month in rent, decedent gave her $50 a month in addition to the groceries. Although in this day and time $50 a month and some food to eat may seem like a very small amount, its value is greatly increased when viewed in the perspective that appellant lived on $400 a month, $200 of which paid her rent." (*Perry v. Medina, supra,* 192 Cal.App.3d at p. 610.)

---

to obtain work"].) By contrast, wrongful death standing is accorded to "dependent" parents who rely, *to some extent,* on the financial support of their children for the necessities of life. (*Hazelwood v. Hazelwood, supra,* 57 Cal.App.3d at p. 698; *Perry v. Medina, supra,* 192 Cal.App.3d at p. 610.)

[9]So far as our research discloses, *Perry v. Medina* is the only published decision in which financial dependence was disputed. In other reported cases, the parents who sought wrongful death standing conceded the lack of financial support. (See, e.g., *Hazelwood v. Hazelwood, supra,* 57 Cal.App.3d 693; *Coats v. K-Mart Corp., supra,* 215 Cal.App.3d 961; *Gabehart v. Simonsen, supra,* 176 Cal.App.3d at p. 675; *Reynolds v. County of San Diego* (S.D.Cal. 1994) 858 F.Supp. 1064, 1069, remanded in part (9th Cir. 1996) 84 F.3d 1162, 1171; Cf. *Collins v. Hemet Valley Hospital Dist.* (1986) 186 Cal.App.3d 922, 928 [231 Cal.Rptr. 92] [the trial court improperly reached the issue of whether the appellants were dependent parents].)

Given those facts, the court concluded that a triable issue was presented on the question of the mother's dependence. (*Ibid.*)

In this case, appellants brought forward a number of facts in support of their status as dependent parents. Those facts shed light on appellants' financial relationship with their son. Among other things, decedent paid his parents $100 per week on average, which helped defray the cost of housing and utilities. He regularly provided groceries and grocery money. Decedent contributed services to the household, including such tasks as window cleaning, maintenance of appellants' four automobiles, and yard work on appellants' one and one-half-acre property. Because appellant Jose Chavez was a diabetic with an injured shoulder and long work hours, he relied heavily on decedent's services for upkeep of the property. In addition, decedent helped purchase a truck in his parents' name, making the $9,000 down payment as well as some of the periodic loan payments. Decedent also helped out from time to time with his father's cleaning business when he was shorthanded or overworked.

Defendant minimizes the significance of decedent's contributions. He argues that decedent's financial contributions to his parents' household were merely compensation for his living there, that the food he provided was for his own consumption, that the truck he helped purchase was for his own use, and that the chores he performed were of the type commonly contributed by household members. Defendant also argues that appellants were not financially dependent on the decedent's contributions, because their own income was sufficient to support them without decedent's assistance. Given these facts, defendant contends as a matter of law that appellants were not dependent parents.

We disagree. The evidence supports an inference that appellants relied on decedent's contributions for necessities, especially during a time of financial hardship in 1994. As Jose Chavez declared: "During this period we came to rely on the weekly contributions of money, groceries and services provided by Altie to make ends meet for our ordinary and customary expenses."

In our view, this record presents a disputed fact question, sufficient to survive summary adjudication, on the question of whether appellants "were actually dependent, *to some extent*, upon the decedent for the necessaries of life." (*Hazelwood v. Hazelwood, supra,* 57 Cal.App.3d at p. 698, italics added.) It appears from this record that appellants received "financial support from their child which *aid[ed] them* in obtaining . . . shelter, clothing, food . . . ." (*Perry v. Medina, supra,* 192 Cal.App.3d at p. 610, italics added.) There is evidence that appellants routinely relied on decedent for

money to defray their ordinary living expenses, and for help with their cars, land, and business. The reasonable inference from that evidence is that appellants relied on decedent's aid—at least to some extent—for life's necessities. That inference is not overcome by defendant's assertion that appellants had sufficient income to pay their mortgage and other bills without decedent's assistance.[10]

" 'In passing upon a motion for summary judgment, the trial court's function is not to find the true facts in the case, but to determine whether a triable issue of fact exists. [Citations.] If a triable issue of fact exists, it is error to grant a summary judgment. [Citation.]' [Citation.]" (*Gabehart v. Simonsen, supra,* 176 Cal.App.3d at p. 677.)

Applying that rule to this case, and considering all the evidence and reasonable inferences in appellants' favor, we conclude that there is a disputed material fact question concerning appellants' financial dependence on decedent. Appellants' standing therefore should not have been summarily adjudicated.

## DISPOSITION

The judgment is reversed. Appellants shall have their costs on appeal.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

---

[10]In support of his assertion below that appellants were self-supporting, defendant pointed out that appellants' mortgage payments consumed only a portion of their monthly gross income. But the record below contains no evidence of how much tax appellants paid on their gross income. Defendant assumes a tax rate of 20 percent. But there is no evidence in the record on which to base such an assumption. Furthermore, the record below also lacks evidence of the total monthly cost of appellants' other necessary living expenses. Appellants disputed defendant's claim that they had "no other monthly bills beyond the normal gas, electric, water and garbage bills." Absent evidence of what appellants paid for taxes and for other necessary expenses, the record does not conclusively establish appellants' self-sufficiency.