Filed 2/29/16  Henriquez v. Honeywell Intl. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NESTOR JULIAN HENRIQUEZ, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HONEYWELL INTERNATIONAL, INC. et al., <br><br> Defendants and Respondents. | B262796 <br><br> (Los Angeles County <br> Super. Ct. No. BC448313) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Edward Rico, Judge.  Affirmed.

Mardirossian & Associates, Garo Mardirossian and Armen Akaragian for Plaintiff and Appellant.

Ropers, Majeski, Kohn & Bentley, Stephan Allen Barber and Rachael E.B. Binder for Defendants and Respondents.

Code of Civil Procedure section 377.60, subdivision (c)[1] permits a minor to bring a wrongful death action "if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support." The sole issue in this appeal is whether plaintiff and appellant, minor Nestor Henriquez, was dependent on decedent, his uncle and legal guardian Alirio Mejia, for one-half or more of his support. Henriquez received Social Security survivors benefits due to the earlier death of his mother, and the trial court concluded after a bench trial that Henriquez was not dependent on Mejia because the survivors benefits were available for Henriquez's support and exceeded Henriquez's pro rata share of the household's monthly food and utilities expenditures.

Henriquez contends the court erred by concluding he was not dependent on Mejia and by factoring his survivors benefits into its analysis. We disagree. The trial court properly considered Henriquez's survivors benefits, and its factual determination that he was not dependent on Mejia was supported by substantial evidence. We accordingly affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Henriquez was four years old when his mother died in a car accident in April 1999. After his mother's death, Henriquez went to live with her sister, Ana Bonilla; Bonilla's husband, Alirio Mejia; and their three children. Bonilla and Mejia became Henriquez's legal guardians in May 2000. Around that same time, they applied for and secured federal Social Security survivors benefits for Henriquez. Henriquez received the survivors benefits monthly until his eighteenth birthday.

In August 2002, Mejia, a carburetor mechanic, was struck by a broken radiator fan blade while working on a car and died from the resulting injuries. In October 2010, Henriquez, by and through his aunt and legal guardian Bonilla, filed a wrongful death products liability action against defendants and respondents Honeywell International, Inc. and Siemens Canada, Ltd., successors in interest to the fan manufacturer. Henriquez

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

claimed he had standing to bring the wrongful death claim under section 377.60, subdivision (c).

Defendants moved for summary judgment or summary adjudication of Henriquez's claims. As is relevant here, they argued that Henriquez lacked standing to assert a wrongful death claim because he did not receive at least one-half of his support from Mejia. Defendants calculated the monthly expenses of the Mejia household to be approximately $3,000 per month, and argued that Henriquez's pro rata share was mostly covered by the $420 in survivors benefits Henriquez received each month. Henriquez opposed the motion, arguing that the survivors benefits were not spent for his support. He pointed to deposition testimony that Mejia and Bonilla "tried to save" and "hardly ever touched" his survivors benefits and that Mejia "paid for [his] expenses and put[] a roof over [his] head and [his] food and all that" using Mejia's own earnings.

The court denied defendants' motion on January 10, 2014. It concluded there was "a triable issue as to whether plaintiff has standing to bring this action" because "there is insufficient evidence that the social security benefits plaintiff received were spent prior to decedent's death."

In April 2014, Henriquez filed his own motion for summary adjudication of the standing issue, in which he largely reiterated the arguments he made in opposition to defendants' earlier motion. Defendants countered that Henriquez "submits no evidence to show how much of the Social Security benefits were supposedly saved for Plaintiff." The court again denied summary adjudication. Specifically, the court found there was "a triable issue as to whether plaintiff has standing, as defendants assert that plaintiff was receiving more than 50% of his financial support from Social Security benefits."

The court held a bench trial on the limited issue of standing on September 16, 2014. The parties stipulated to the following facts at the outset. "Alirio Mejia is the decedent, and he died in an accident on August 12, 2002. At all relevant times, Mejia and Ana Bonilla were married. Mejia and Bonilla are the court-appointed guardians of plaintiff Nestor Henriquez, and the appointment was made in May of 2000 by the court. The plaintiff is not the natural or adopted son of Mejia or Bonilla. The plaintiff lived in

3

Mejia's household continuously for 180 days prior to the August 12, 2002, accident. There were six persons living in Mejia's household at the time of the accident, including Mejia himself and the plaintiff. The monthly household expenses for the Mejia household were $1,738.24 for the mortgage, principal, and interest. Property taxes were $400, utilities were $350, food was $500, and the plaintiff's personal expenses for clothing and medical were $100 per month. The plaintiff was receiving $420 per month for Social Security survivor benefits in 2002 based on the death of his natural mother a few years before. [¶] There are no records available for 2002 showing how the Social Security benefits were saved or spent. The bank records going back to the 2002 time frame were subpoenaed and the bank states that those records no longer exist and have been purged. [¶] Plaintiff Nestor Henriquez was eight years old at the time of Mejia's accident and was unable to support himself financially."

Henriquez called Bonilla as the sole witness. She testified that Henriquez's survivors benefits were deposited into a savings account at Los Angeles National Bank. The account was in Henriquez's name; Mejia's name was "the second name" on the account. Bonilla could not find any relevant bank statements or documentation from the Social Security Administration, but she recalled that Mejia "would try to save" the benefits for Henriquez "by setting it aside and putting it in the bank." In the 180 days before Mejia's death, the benefits were "used, but very little, very little," meaning Mejia withdrew "[a]round 25 or $50 per month" "[t]o buy a toy or to buy a shirt for him or to buy food for him." According to Bonilla, Mejia paid the household mortgage, property taxes, transportation expenses, clothing expenses , and "almost all" Henriquez's living expenses. Bonilla agreed on cross-examination that the household's living expenses exceeded $26,000 per year,[2] and authenticated a 2001 federal tax return reporting that the household had only $21,719 in income.

Defendants urged the court to infer from the tax return that "there's not enough money coming in from the earnings of Bonilla and Mejia" to cover household expenses,

---

[2] Based on the parties' stipulated facts, the household's annual living expenses were $37,058.88.

4

"so the extra money had to come from somewhere else" – Henriquez's survivors benefits. They also argued that "it doesn't matter whether those benefits were saved or spent or partially saved and partially spent" because they were "made available for the support of" Henriquez. Henriquez disagreed, arguing that section 377.60, subdivision (c) "doesn't say" that the "availability of support is important." He further contended, "It's not the availability; it's who was supporting and the undisputed facts are here that Alirio was supporting and Nestor was financially dependent on Alirio in [the] 180 days before his passing."

The court issued its written ruling on September 19, 2014. The court accepted the parties' stipulated facts and further found that "a savings account was established for Henriquez with Mejia a signatory to the account. The checks were deposited into the account and small amounts, approximately $25 to $50 per month, were withdrawn for Henriquez's living expenses such as clothing. [¶] . . . [¶] Bonilla testified that Mejia provided the main source of income for the household. Bonilla also worked part time cleaning houses earning approximately $500 per month. She used that money to support her parents and she saved the balance of the money. No one else worked in the household during the relevant time period."

Observing that there was "virtually no case law" addressing when a minor is dependent upon a decedent, the trial court looked to *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433 (*Chavez*), which addresses section 377.60, subdivision (b), for guidance.[3] Citing *Chavez,* the court explained that "[f]or purposes of [section 377.60, subdivision (b)], dependence refers to financial support. . . . if a parent receives financial support from their child which aids them in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without, the parent is dependent upon their child. The death of that child in this type of situation results in

---

[3] Section 377.60, subdivision (b) permits "the putative spouse, children of the putative spouse, stepchildren, or parents" of a decedent to bring a wrongful death action "if they were dependent on the decedent." Unlike subdivision (c), it does not quantify the extent of dependence necessary to support standing.

distinct pecuniary loss to the parent which requires the parent to find aid elsewhere for the basic things all need." The court concluded that, "[i]n the present case, one can merely transpose the word parent and child and one is confronted with the same situation as in *Chavez.*" The court then made the following ruling:

"But for the fact that Henriquez received $420 per month in social security benefits, it would be undisputed that he would have standing to sue following Mejia's death. Henriquez argues that since the majority of the money he received was put into a savings account for the future, the issue of the $420 is irrelevant to the analysis. This cannot be correct. It needs no citation to the law to state that the survivor social security benefits Henriquez received following his mother's death were to be used for his support. While it is laudatory that Mejia put Henriquez' social security checks into a bank account for future use, the money was nonetheless available for Henriquez' support. Henriquez' reliance on anyone else for support would have to take into account the $420 per month Henriquez was receiving. [¶] Unfortunately neither party has made a cogent analysis as to what financial support Henriquez was receiving from Mejia. Of the household monthly expenses stipulated to by the parties, the only costs that Henriquez would have added to the household were for food and utilities. Even if the court were to divide that number by 6 (the number of individuals in the household), that number, $141, is still substantially smaller than the $420 Henriquez was receiving in social security benefits. While Henriquez was also provided with shelter, neither party provided the court with a way to calculate the cost of sheltering Henriquez. Clearly the cost of the mortgage and property taxes did not increase because of Henriquez' presence in the household. The court cannot speculate as to what addition [sic] financial cost, if any Mejia provided Henriquez as a result of giving him a place to live at the time in question. [¶] A wrongful death plaintiff is required to plead and prove standing to sue. [Citation.] Here, Henriquez has failed in his burden of proof to establish that he was dependent on the decedent (Mejia) for one-half or more of his support. Therefore, the court finds in favor of the defendant."

On February 3, 2015, the parties stipulated that the court's ruling rendered "the issues of liability and damages moot and that Judgment must be entered in favor of Defendants and against Plaintiff." The court accepted the stipulation and entered judgment the same day. Henriquez timely appealed.

## DISCUSSION

The right to bring a wrongful death action is limited to those persons described in section 377.60. (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 188 (*Soto*); *Phraner v. Cote Mart, Inc.* (1997) 55 Cal.App.4th 166, 168.) "'"The category of persons eligible to bring wrongful death actions is strictly construed." [Citation.]' [Citation.] A plaintiff seeking to bring a wrongful death claim bears the burden of pleading and proving his or her standing to do so. [Citation.]" (*Soto*, *supra*, 239 Cal.App.4th at p. 188.) Thus, to demonstrate standing under section 377.60, subdivision (c), the only wrongful death statute applicable here, Henriquez had to plead and prove that he "resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support." (§ 377.60, subd. (c).) The parties stipulated that Henriquez satisfied the residency requirement. The existence and extent of financial dependence are questions of fact (*Soto*, *supra*, 239 Cal.App.4th at p. 190) that we review for substantial evidence after trial (*Hazelwood v. Hazelwood* (1976) 57 Cal.App.3d 693, 696 [using substantial evidence standard to review finding of no dependence under former section 377, the predecessor to section 377.60]). To the extent Henriquez challenges the court's application of law to the facts it found, our review is de novo. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

At the time of the trial court's ruling, there was no case law applying or interpreting section 377.60, subdivision (c) or its requirements regarding dependence and support. (See *Soto*, *supra*, 239 Cal.App.4th at p. 189.) The trial court accordingly relied upon *Chavez*, *supra*, 91 Cal.App.4th at pp. 1445-1446, a case interpreting the word "dependent" as used in section 377.60, subdivision (b) to mean actual dependence upon the decedent for the "necessaries of life," such as obtaining items like shelter, clothing, food, and medical treatment, "which one cannot and should not do without." The *Chavez*

7

court further held that "dependence refers to financial support," not emotional or other important yet abstract measures of support. (*Id.* at p. 1445.) The trial court applied these holdings in its decision.

The trial court's analogy to *Chavez* was prescient. In *Soto*, which was decided during the pendency of this appeal, this court also looked to *Chavez* and other cases interpreting section 377.60, subdivision (b). (*Soto*, *supra*, 239 Cal.App.4th at pp. 189-190.) We held that "the term 'dependent' as used in subdivision (c) has the same meaning as the term 'dependent' as used in subdivision (b)" of section 377.60. (*Soto*, *supra*, 239 Cal.App.4th at p. 190.) We further clarified that a minor seeking standing under section 377.60, subdivision (c) would have to prove he or she "relied upon" the decedent "for one-half or more of the financial support for his [or her] necessaries of life." (*Ibid.*)

We concluded the minor in *Soto* could not make that showing. The minor, Eli, lived in his grandfather's home along with his parents. His grandfather, the decedent, paid most of the household's rent and utility bills. He also bought toys and books for Eli, and sometimes paid Eli's pre-preschool tuition. (*Soto*, *supra*, 239 Cal.App.4th at p. 179.) Prior to moving in with the decedent, however, Eli's parents had paid for "their own mortgage, lot rent, utilities, television, childcare costs, transportation, and other living expenses such as food and clothing for Eli." (*Ibid*.) While living with the decedent, Eli's parents continued working. Because of the decedent's generosity, however, the parents were not spending much of their earnings on Eli's "necessaries of life." Instead, they paid for (some of) Eli's private school tuition, subscribed to satellite television, and saved money for a down payment on a house – "'some of the niceties of life they might not otherwise be able to afford.' [Citation.]" (*Id.* at p. 190.) We nonetheless concluded that Eli was not dependent on the decedent for one-half or more of his support, because his parents' earnings were available to the household purse and "there was no testimony that [his parents] could not afford to pay rent, buy groceries, provide clothes for Eli, or otherwise make ends meet" absent the contributions from the decedent. (*Ibid.*)

8

Henriquez contends the trial court misinterpreted section 377.60, subdivision (c) by considering the availability of his survivors benefits when evaluating his financial dependence on Mejia. We disagree. The trial court, acting without the benefit of *Soto*, relied upon the same case law we relied upon in *Soto*. It also correctly anticipated *Soto*'s consideration of the entire picture of a household's finances. The court considered not only the availability of funds which readily could be directed toward providing Henriquez with the necessities of life, but also the household's ability to meet its expenses absent the funds. In *Soto*, we emphasized that Eli's parents "'*could have* supported him at some other, lower standard of living without [the decedent's] help.'" (*Soto*, *supra*, 239 Cal.App.4th at p. 191.) The decedent's financial contributions therefore did not render Eli dependent on the decedent.

Similarly, here, the court concluded Henriquez's survivors benefits were available for his day-to-day needs even though Mejia's generosity enabled the benefits to be saved for Henriquez's future. Even without Mejia's financial contributions, Henriquez's Social Security benefits were more than sufficient to cover the stipulated costs of Henriquez's necessaries of life. This conclusion comports with *Soto* and its interpretation of section 377.60, subdivision (c).

Henriquez argues that such an interpretation of section 377.60, subdivision (c) is untenable because it would require minors like him to "first establish that no financial resources were *potentially* available to the minor other than those that were actually provi[d]ed by the Decedent for the minor's support." He claims that "standing under subdivision (c) would be defeated by every defendant who for example argues that the minor had a remote rich uncle living in Florida, or that the minor was old enough to look for potential employment to obtain financial resources independently. . . . Any resources of which the minor might potentially avail themselves outside the financial support actually provided by the decedent could be used to defeat standing." These hypotheticals do not follow from *Soto* or the trial court's holding and are not persuasive. The survivors benefits in this case, like the parents' earnings in *Soto*, were not merely potentially available for Henriquez's support; they *in fact* were available and, crucially, were

9

sufficient to satisfy at least one-half of his day-to-day needs.  Moreover, a defendant could not defeat a minor's evidentiary showing of dependence merely by "arguing" that the minor might have a rich uncle or could try to get a job.  The defendant would have to introduce evidence that such sources would be appropriate to consider and were *in fact* available to provide financial support to the minor in a particular case.  Sheer speculation is not enough to defeat an evidentiary showing.

Finally, Henriquez contends that the judgment must be reversed because undisputed facts prove he was dependent on Mejia for one-half or more of his support. We are not persuaded.  The undisputed facts in this case establish that the Mejia household spent approximately \$141-\$241[4] on Henriquez's necessaries of life per month and received \$420 per month in survivors benefits earmarked for Henriquez's  "current maintenance" needs, such as "food, shelter, clothing, medical care, and personal comfort items" (20 C.F.R. § 404.2040(a)), and future support needs (20 C.F.R. § 404.2045).  It is laudable that Mejia allocated a substantial portion of the benefits to Henriquez's future needs, particularly in light of the household's financial status. But the benefits remained accessible and available for Henriquez's support and properly were considered as such by the trial court.

---

[4] The court found that Henriquez's proportionate share of the household's monthly food and utility bills was \$141.  The parties also stipulated that Henriquez incurred approximately \$100 per month in clothing and medical expenses.

## DISPOSITION

The judgment of the trial court is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

11