Filed 1/22/15  Stenehjem v. Akon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JEROME STENEHJEM,<br><br>    Plaintiff and Appellant,<br><br>         v.<br><br>AKON, INCORPORATED, et al.<br><br>    Defendants and Respondents. | H039329<br>(Santa Clara County<br>Super. Ct. No. 111CV209402) |

Jerome Stenehjem sued his former employer, Akon, Inc., and its president and chief executive officer, Surya Sareen, for wrongful termination and defamation, among other causes of action.  Judgment was entered against Stenehjem after a jury trial.

On appeal, Stenehjem challenges certain evidentiary rulings made by the trial judge and contends that the court erred in the form of special verdict it submitted to the jury.  He also asserts the court erred when it granted summary adjudication of two of his claims before trial.

We conclude the court properly granted Sareen's motion for summary adjudication of the second cause of action for misrepresentation under Labor Code

section 1050, and the fifth cause of action for intentional infliction of emotional distress.[1] We conclude further that Stenehjem has failed to establish that any of the rulings of the trial court constituted prejudicial error. Accordingly, we will affirm the judgment.[2]

PROCEDURAL HISTORY

I.    *Complaint*

Stenehjem filed suit on or about September 19, 2011. The operative pleading is the unverified Third Amended Complaint (Complaint) filed on April 12, 2012, against Akon and Sareen (collectively, Defendants). Stenehjem alleged that he commenced his employment with Akon in November 2006 and that he "was in all respects an exemplary employee." Stenehjem alleged six causes of action: (1) defamation; (2) unlawful prevention of employment by misrepresentation (§ 1050; Labor Code section 1050 claim); (3) employment discrimination under the Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA); (4) wrongful termination in violation of public policy; (5) intentional infliction of emotional distress (IIED claim); and (6) breach of the implied covenant of good faith and fair dealing. The first, second, and fifth causes of action were alleged against both defendants. The other causes of action were alleged against Akon, only.

With respect to the first cause of action for defamation, Stenehjem alleged that beginning on or about January 20, 2011, "Defendants began to publicly, falsely and maliciously state [to Akon employees and others] that [Stenehjem] had physically assaulted and battered a petite female coworker during a discussion about her violations

---

[1] Further statutory references are to the Labor Code unless otherwise stated.

[2] In a separate appeal heard and decided with this appeal (*Stenehjem v. Akon, Inc.,* case no. H039738), Stenehjem challenged a postjudgment order awarding attorney fees to Akon, pursuant to Government Code section 12965, subdivision (b). In a separate opinion filed this date, we also affirm that postjudgment order.

of company policies." The Labor Code section 1050 claim (second cause of action) was based upon the allegation that "Defendants blacklisted [Stenehjem] by making false and disparaging statements that [he] beats women" to people, including vendors and potential employers with whom he had applied for a job. Stenehjem alleged in the third cause of action for discrimination under FEHA that Akon had a policy against employing people born in the United States, and that his "sex, gender, race, national origin, ancestry, and color were substantial factors in [Akon's] decision to terminate his employment." The IIED claim (fifth cause of action)[3] was based upon "Defendants' unlawful conduct [that constituted] extreme and outrageous conduct."[4]

## II. *Motion for Summary Judgment/Summary Adjudication*

In July 2012, Sareen filed a motion for summary judgment, or, in the alternative, a motion for summary adjudication of the claim for defamation, the Labor Code section 1050 claim, and the IIED claim. Stenehjem opposed the motion. The motion included the declaration of Sareen, and the opposition included the declaration of Stenehjem.

On November 15, 2012, the court denied the motion for summary judgment, finding there to be triable issues of material fact as to the first cause of action for defamation. The court also denied summary adjudication of the defamation cause of

---

[3] As noted, *post*, the trial court granted Defendants' nonsuit motion as to the fourth cause of action for wrongful termination in violation of public policy and the sixth cause of action for breach of the implied covenant of good faith and fair dealing, and Stenehjem does not challenge those rulings on appeal.

[4] Because of a related case before this court, we are aware that there was a cross-complaint filed by Sareen against Stenehjem alleging a claim for civil extortion. Sareen appealed from an order granting Stenehjem's special motion to strike that cross-complaint pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute). We held the court erred and reversed that order. (See *Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405.) Pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), we take judicial notice of this prior opinion because it "help[s] complete the context of this case." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2.)

action, but granted summary adjudication of both the second cause of action for unlawful prevention of employment by misrepresentation under section 1050 and the fifth cause of action for intentional infliction of emotional distress.

### III.     Trial and Judgment

The case proceeded to trial on November 28, 2012.  Before a verdict was rendered, the trial court dismissed the second and fifth causes of action against Akon on the same basis as the court's prior ruling granting in part Sareen's motion for summary adjudication.  The court also granted Defendants' motion for nonsuit on the fourth cause of action for wrongful termination in violation of public policy and the sixth cause of action for breach of the implied covenant of good faith and fair dealing.  Neither of these rulings is challenged by Stenehjem on appeal (except to the extent he argues the trial court erred in granting in part Sareen's summary adjudication motion).  On December 7, 2012, a jury found in favor of Defendants and against Stenehjem on his claims for defamation and discrimination.  Judgment was entered on December 17, 2012.

## DISCUSSION

### I.     The Summary Adjudication Order

#### A.     Applicable Law and Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  As such, the summary judgment statute, Code of Civil Procedure section 437c, "provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203.)  A summary judgment motion must demonstrate that "material facts" are undisputed.  (Code Civ. Proc., § 437c, subd. (b)(1).)  "The materiality of a disputed fact is measured by the

pleadings." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.) A plaintiff moving for summary judgment establishes the absence of a defense to a cause of action by proving "each element of the cause of action entitling the party to judgment on that cause of action." (Code Civ. Proc., § 437c, subd. (p)(1).) The plaintiff need not, however, disprove any affirmative defenses alleged by the defendant. (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 565.) Once the plaintiff's burden is met, the burden of proof shifts to the defendant "to show that a triable issue of one or more material fact exists as to that cause of action or defense thereto." (*Ibid.*) In meeting this burden, the defendant must present "specific facts showing" the existence of the triable issue of material fact. (*Ibid.*)

"A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) Like summary judgment, the moving party's burden on summary adjudication is to establish evidentiary facts sufficient to prove or disprove the elements of a claim or defense. (Code Civ. Proc., § 437c, subds. (c), (f).)

Since both summary judgment and summary adjudication motions involve pure questions of law, we review the granting of summary judgment or summary adjudication de novo to ascertain from the papers whether there is a triable issue of material fact. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142; *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.) In doing so, we "consider[] all of the

5

evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

In our independent review of the granting of summary judgment or summary adjudication, we conduct the same three-step procedure employed by the trial court. First, "we identify the issues framed by the pleadings because the court's sole function on a motion for summary judgment is to determine whether there is a 'triable issue as to any material fact' ([Code Civ. Proc.,]§ 437c, subd. (c)), and to be 'material' a fact must relate to some claim or defense *in issue* under the pleadings. [Citation.]" (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926, original italics.) Second, we examine the motion to determine whether it establishes facts justifying judgment in the moving party's favor. (*Chavez v. Carpenter*, *supra*, 91 Cal.App.4th at p. 1438.) Third, we scrutinize the opposition—assuming movant has met its initial burden—to "decide whether the opposing party has demonstrated the existence of a triable, material fact issue [to defeat summary judgment or summary adjudication]. [Citation.]" (*Ibid.*; see also *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 688.) Since the moving party here is the defendant, our de novo review tests whether defendant has "show[n] that the plaintiff cannot establish at least one element of the cause of action." (*Aguilar*, *supra*, 25 Cal.4th at p. 853.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

B.      Summary Adjudication of Labor Code § 1050 Claim

1.      *Evidence Presented*

In Sareen's declaration in support of his motion, he stated that after January 20, 2011, he never spoke "with anyone who identified himself or herself as a prospective employer of Mr. Stenehjem." Sareen argued there was no competent evidence to support

6

Stenehjem's claim that a misrepresentation was made to a prospective employer of Stenehjem in an attempt to prevent his hiring in violation of section 1050.

Stenehjem argued in opposition that, based upon the deposition testimony of Phil DuVall, "Sareen went out of his way to prevent DuVall and his companies [Brandt Electronics and E. Reid Miller] from hiring [Stenehjem]." He argued further that "DuVall knew about the false rumor about [Stenehjem] and a female employee" and this raised a triable issue of fact as to whether Sareen had made a false statement to DuVall that Stenehjem had physically assaulted an Akon employee.

DuVall—whose deposition was taken after Sareen's motion was filed—testified he had "one serious interaction with [Stenehjem] for four or five minutes" when Stenehjem was unemployed and DuVall was "thinking about giving him a job." It was a "nice interview" in which Stenehjem met DuVall at Brandt. DuVall did not hear from Stenehjem after the meeting, and DuVall did not contact him. DuVall testified the "deal . . . didn't go anywhere." It "[n]ever went any further than [the 'nice interview.'] We still haven't done that." He stated further that had he hired Stenehjem, the process would have been much more lengthy; it would have consisted of several meetings lasting multiple hours.

DuVall testified that he and Sareen talked approximately two or three times a week, "[g]enerally about technical things." Around the time DuVall spoke to Stenehjem about a job, Sareen called DuVall and "suggested that [Stenehjem] wasn't who he used to be, and that he [was] probably not a good candidate and [DuVall] shouldn't hire him." DuVall testified that Sareen did not mention any specific problems with Stenehjem. "But he said that he didn't think [hiring Stenehjem] would be a good choice . . . like[,] his attitude had changed." In his deposition, DuVall discounted the importance of his conversation with Sareen, testifying that DuVall would not "let somebody tell [him] who[m] to hire and not to hire."

7

In Stenehjem's declaration, he stated he had sought a job with Brandt and had interviewed with DuVall. After the interview, DuVall told Stenehjem "that he was concerned about a conflict with a female employee that he had heard about. Mr. DuVall also admitted to [Stenehjem] that he had spoken to Sareen about hiring [Stenehjem] and decided against it."

### 2. *Summary Adjudication Was Proper*

Because "the pleadings set the boundaries of the issues to be resolved at summary judgment" (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648), we review the allegations in the second cause of action of the Complaint. Stenehjem alleged that after his termination, "Defendants blacklisted [Stenehjem], including by making false and disparaging statements that [he] beats women . . ." Defendants allegedly made these statements to, among others, "potential employers to whom [Stenehjem] had applied or interviewed for employment following his firing from Akon." Stenehjem alleged further that "Defendants knew that the statements were false," and he suffered resulting damage, including harm to his occupation and a loss of earnings.

Section 1050 provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." One who violates that statute is civilly liable "to the party aggrieved" for treble damages. (§ 1054; see *Kelly v. General Telephone Co.* (1982) 136 Cal.App.3d 278, 288 (*Kelly*).) Claims under section 1050 are similar to claims for defamation (*Walker v. Boeing Corp.* (C.D.Cal. 2002) 218 F.Supp.2d 1177, 1185, fn. 4), and the statute "applies only to misrepresentations made to prospective employers" (*Kelly*, at p. 288).

A review of the evidence as recited above discloses that there was no triable issue of fact to support Stenehjem's Labor Code section 1050 claim. There was no evidence

8

that Sareen (or anyone associated with Akon) made a misrepresentation that "prevent[ed] or attempt[ed] to prevent [Stenehjem] from obtaining employment." (§ 1050.) At most, Stenehjem presented evidence that Sareen contacted DuVall and expressed the opinion that Stenehjem was not a worthy candidate for DuVall to hire. Such a statement of opinion did not constitute a *misrepresentation* under section 1050.

Further, that DuVall (according to Stenehjem) expressed a concern about having heard of a conflict with a female employee does not create a triable issue of fact. Stenehjem admitted in his declaration there *was* such a dispute that resulted in his use of profanity toward a female coworker, Hanh Phan. He declared that on the afternoon of January 20, 2011, he had a confrontation with Hanh[5] in which she yelled at him "about her displeasure [concerning] the implementation of new procedures which Sareen had ordered for material accountability and traceability." After asking Hanh several times to listen to him, he told her, " '[S]hut the fuck up and listen.' " Later that day, Sareen was told by Avinash Ratra, Akon's vice president, about this confrontation and that Stenehjem had not denied what had occurred and had refused to talk to Ratra. Sareen then made the decision to terminate Stenehjem's employment, because Stenehjem had a history of misconduct and had received a " 'last warning' " in June 2010 as a result of a conflict with another employee. Thus, even if DuVall had learned about a prior conflict between Stenehjem and a female coworker *from Sareen*—and there is no evidence to support Sareen's having said this to DuVall—it was a true statement, not a misrepresentation, and hence not actionable.

Moreover, the record does not support any contention that Sareen told DuVall that Stenehjem had assaulted a female coworker, or, as alleged in the Complaint, made the

---

[5] We understand that Vietnamese names generally consist of family name, middle name, and given name, in that order. Under this convention, the employee's surname is Hanh. She is often referred to in the record by that name, and we will do so here.

"false and disparaging statement[] that [Stenehjem] beats women . . ." To the contrary, DuVall directly testified that Sareen never told DuVall that Stenehjem had fought with women, had fought with a coworker, or had assaulted anyone. There is no evidence to support the pleaded claim under section 1050 that Defendants made a misrepresentation to Stenehjem's prospective employer that (1) he "beats women," or (2) he had assaulted a female coworker.

Stenehjem also urges that the evidence presented a prima facie case of Sareen's having violated section 1053. That statute provides: "Nothing in this chapter shall prevent an employer or an agent, employee, superintendent or manager thereof from furnishing, upon special request therefor, a truthful statement concerning the reason for the discharge of an employee or why an employee voluntarily left the service of the employer. If such statement furnishes any mark, sign, or other means conveying information different from that expressed by words therein, such fact, or the fact that such statement or other means of furnishing information was given without a special request therefor is prima facie evidence of a violation of sections 1050 to 1053." Stenehjem contends Sareen's alleged conduct of "preemptively telling DuVall various wrongful statements about employing Stenehjem with no special request" constituted a prima facie violation of sections 1050 and 1053. The contention is without merit.

Section 1053 concerns a former employer's providing a statement of the reasons for an employee's termination or voluntary separation. The first sentence of the statute immunizes from liability under section 1050 et seq. conduct by employers and their agents that consists of a "truthful statement concerning the reason for the discharge of an employee or why an employee voluntarily left the service of the employer." (§ 1053.) The second sentence of the statute begins by referring to ". . . such statement," thereby referring to a statement concerning the reasons for the employee's termination or voluntary separation. Here, as noted, there was no evidence that Sareen made a statement to DuVall—whether truthful or not—about the reasons Stenehjem was terminated by

10

Akon. Therefore, the fact that Sareen, according to DuVall, offered an *opinion* concerning the potential hiring of Stenehjem—even if it were made without a "special request" by DuVall—is not "prima facie evidence of a violation of section 1050 to 1053" within the meaning of section 1053. Accordingly, we conclude the trial court did not err in granting Sareen's motion for summary adjudication of the second cause of action for unlawful prevention of employment by misrepresentation (§ 1050).

> C.    Summary Adjudication of IIED Claim

Stenehjem's fifth cause of action for intentional infliction of emotional distress— which included an incorporation by reference of all preceding paragraphs of the Complaint—was based upon "Defendants' unlawful conduct [that constituted] extreme and outrageous conduct." Stenehjem identified that conduct as "the defamation, blacklisting, and wrongful termination described above." Stenehjem alleged this conduct caused him "to suffer humiliation, severe emotional and physical distress, and [injury] in [his] mind and body."

Section 3600—one of the provisions of the Workers' Compensation Act (§ 3200 et seq.; WCA)—provides that "[l]iability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . , shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where [specified statutory] conditions of compensation concur." Under section 3602, "[w]here the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is [subject to statutory exceptions], the sole and exclusive remedy of the employee . . . against the employer."

The California Supreme Court has held that this WCA exclusive remedy provision applies, in general, to injuries to an employee arising from his or her termination because they "ordinarily arise out of and occur in the course of the employment within the meaning of Labor Code section 3600." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 19-20

11

(*Shoemaker*).) Thus, where an employee attempts to assert an independent cause of action for IIED based upon conduct arising out of the employment relationship—such as discipline or criticism of the employee—such an IIED claim is barred by the WCA's exclusivity provisions "[e]ven if such conduct may be characterized as intentional, unfair or outrageous." (*Id.* at p. 25.)

In *Livitsanos v. Superior Court* (1994) 2 Cal.4th 744, 749 (*Livitsanos*), a terminated employee sued his employer under various theories, including an IIED claim. He contended—relying mainly on *Renteria v. County of Orange* (1978) 82 Cal.App.3d 833 (*Renteria*))—that because he had not alleged any physical injury or disability, his IIED claim was not barred by the WCA's exclusivity provisions. (*Livitsanos*, at pp. 749-750.) In *Renteria*, the court had concluded that an IIED claim "constituted an implied exception to workers' compensation exclusivity under conditions where the ' "essence of the tort, in law, [was] non-physical . . ." ' [Citation.]" (*Livitsanos*, at p. 751, quoting *Renteria*, at p. 842.) The Supreme Court rejected the *Renteria* court's reasoning, holding that workers' compensation is normally the exclusive remedy for an employer's intentional misconduct, even when the employee's only injury is emotional: "So long as the basic conditions of compensation are otherwise satisfied [citation], and the employer's conduct neither contravenes fundamental public policy [citation], nor exceeds the risks inherent in the employment relationship [citation], an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos*, at p. 754; see also *id.* at p. 756 ["assertion that purely emotional injuries lie outside the scope of the workers' compensation system" has no merit].)

Thus, under *Livitsanos*, to the extent Stenehjem based his IIED claim on Defendants' alleged "wrongful termination" of him, the claim is barred by the exclusivity provisions of the WCA. (*Livitsanos*, *supra*, 2 Cal.4th at p. 754; see also *Miklosy v. Regents of Univ. of Calif.* (2008) 44 Cal.4th 876, 903 [IIED claim arising from

12

termination allegedly in retaliation for whistleblowing barred under WCA's exclusivity provisions]; *Jones v. Dept. of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1382 [IIED claim based upon alleged employment discrimination barred by WCA's exclusivity provisions, even if discriminatory conduct was intentional].) Moreover, any alleged conduct by Defendants involving "defamation" occurring at or about the time of Stenehjem's termination was subsumed by his separate cause of action for defamation, as to which the trial court denied Sareen's summary adjudication motion.[6] Furthermore, to the extent Defendants' alleged outrageous conduct consisted of "blacklisting," since Stenehjem failed to present evidence raising a triable issue of material fact in support of a Labor Code section 1050 claim, any IIED claim based upon the same alleged "blacklisting" likewise fails.

Stenehjem nonetheless argues the trial court's ruling was "incorrect as a matter of law" because the conduct upon which the IIED claim was based occurred *after* the termination of his employment. That contention is also without merit. As noted, there was no evidence presented that Defendants, after Stenehjem's termination, blacklisted him. Further, to the extent the IIED claim is based upon Sareen's alleged statements that

---

[6] The California Supreme Court in *Livitsanos* noted that the issue of whether defamation claims arising out of the course and scope of employment are barred under the WCA's exclusivity provisions is an unsettled one, but the court did not decide the issue. (*Livitsanos*, *supra*, 2 Cal.4th at p. 757, fn. 9.) It observed, however, that some courts, including one California court, have concluded that such claims are not covered under the workers' compensation laws because the tort involves "damage to 'reputation,' a 'proprietary' as distinct from a physical or mental injury." (*Ibid.*, citing *Howland v. Balma* (1983) 143 Cal.App.3d 899.) Sareen did not argue in his motion that the defamation claim was barred by the WCA's exclusivity provisions. Instead, his unsuccessful motion was based upon the contentions that (1) any statement that Stenehjem had assaulted a female coworker was not defamatory because he had in fact shoved a female coworker, and (2) there was no evidence Sareen made any statement with malice.

Stenehjem had assaulted a female employee, the only evidence presented was that Sareen made these statements at or about the time of Stenehjem's termination on January 20, 2011. There was no evidence that such alleged defamation occurred after that date.

We conclude that Stenehjem's IIED claim was barred by the exclusivity provisions of the WCA. (*Livitsanos*, *supra*, 2 Cal.4th at p. 754.) Accordingly, the trial court properly granted Sareen's motion for summary adjudication of the fifth cause of action.

## II. *Challenged Rulings at Trial*

Stenehjem asserts that the court below erred with respect to three rulings made at trial. First, he contends the court committed error in the exclusion of proffered deposition testimony of DuVall, who was a witness at trial. Second, he argues that the court erred in excluding the trial testimony of two witnesses (John Stokes and Dennis Tuccori) in support of the defamation claim. And third, he contends the court erred by (1) rejecting a special verdict form proposed by him, and (2) by submitting an alternative special verdict form concerning his FEHA discrimination claim.

### A. Standards of Review

Rulings by the trial court concerning the admissibility of evidence are generally reviewed under an abuse of discretion standard. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476; *Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1111.) "[A] reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice. . . . 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]" (*Denham v.*

14

*Superior Court* (1970) 2 Cal.3d 557, 566; see also *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*).)

The propriety of a jury instruction is a question of law that is reviewed de novo. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82, citing *People v. Cole* (2004) 33 Cal.4th 1158, 1206.) Likewise, the substance of a special verdict form is subject to de novo review. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325.) But a judgment in a civil case will not be reversed based upon instructional error " 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citation.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) And the court is not required to give a special verdict upon the request of a party. Code of Civil Procedure section 625 provides that "[i]n all cases, the court *may* direct the jury to find a special verdict in writing, upon all, or any of the issues . . ." (Italics added.) A trial court's decision as to whether to submit a special verdict form to the jury, therefore, is reviewed for abuse of discretion. (*Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 590 (*Gherman*).)

B.     Exclusion of DuVall Deposition Testimony

Stenehjem called DuVall as a witness at trial. On appeal, he asserts the court erred by sustaining objections to his attempts to introduce excerpts of DuVall's deposition testimony. His recitation in his opening brief of what allegedly transpired is as follows: "Mr. DuVall changed his prior testimony that Sareen told him not to hire Stenehjem, and claimed not to remember that statement. [Record citation.] Counsel for Stenehjem sought to read DuVall's deposition testimony [record citation] into the record at trial but the trial court sustained objections by Respondents' counsel. [Record citation.]"

The record before us does not support Stenehjem's recitation of what transpired. Instead, the record shows that Stenehjem's counsel asked DuVall about his conversation with Sareen that occurred at or about the time DuVall interviewed Stenehjem. After

15

DuVall testified that Sareen told him that DuVall "ought to be careful" concerning Stenehjem, Stenehjem's counsel advised that he wanted to read a portion of DuVall's deposition into the record. Defense counsel interjected, "Your Honor? Is this prior inconsistent?" The court then asked counsel to approach and an unreported conference transpired. Stenehjem's counsel then posed additional questions to DuVall about his telephone conversation with Sareen concerning Stenehjem. DuVall testified that Stenehjem was not the primary subject of the call, and he did not recall precisely what was said because of the amount of time that had passed and because DuVall "didn't think [Stenehjem's possible hiring] was going anywhere." When asked whether Sareen had said he should not hire Stenehjem, DuVall responded: "He might have implied it, you know. I would . . . say that there was a comment. It did not become the primary item during the course of the interview." Stenehjem's counsel again announced that he intended to read the same excerpts of DuVall's deposition testimony. Defense counsel said, "Same objections as before, [Y]our Honor." After a second unreported sidebar conference, Stenehjem's counsel did not raise the potential introduction of DuVall's deposition testimony again. And there is no record as to the specifics of any objection made by defense counsel or the substance of any ruling by the court concerning the proffered deposition testimony.

Evidence Code section 354 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination." As has been explained by the California

16

Supreme Court: "[A] judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 580 (*Anderson*), quoting Evid. Code, § 354, subd. (a).) "This rule is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice. [Citations.]" (*Anderson*, at p. 580.)

It is the appellant's burden of affirmatively showing error in connection with a trial court's evidentiary rulings. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 (*Truong*).) This requires appellant to present an adequate record indicating that he or she made an offer of proof to the trial court identifying the ground(s) upon which it was asserted that the evidence was admissible. (See *Shaw*, *supra*, 170 Cal.App.4th at pp. 282-283 [appellate challenge concerning exclusion of evidence forfeited where appellant failed to make offer of proof or assert basis for admissibility to trial court]; *Magic Kitchen LLC v. Good Things Internat. Ltd.* (2007) 153 Cal.App.4th 1144, 1165 [same].) And it is axiomatic that an appellate challenge to the exclusion of evidence requires that the appellant point to an actual ruling made by the trial court.

Here, Stenehjem makes the *assumption* that the trial court excluded his proffered evidence (excerpts of DuVall's deposition), and argues two separate grounds upon which the evidence was admissible. But he points to nothing in the record confirming that the court indeed excluded the evidence, nor is there any indication he made an offer of proof regarding the bases for the admissibility of the evidence. Thus, Stenehjem has not met his burden of showing error (*Truong*, *supra*, 181 Cal.App.4th at p. 119), and his claim of error is forfeited. (*Shaw*, *supra*, 170 Cal.App.4th at pp. 282-283; see also *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 (*Pringle*) [claimed error in evidentiary rulings forfeited by failure to present reporter's transcript necessary for appellate review].)

17

C. Exclusion of Stokes/Tuccori Testimony

*1. Background*

John Stokes and Dennis Tuccori, both former Akon employees, were called by Stenehjem as trial witnesses. Stenehjem argues on appeal that the court erred in connection with evidentiary rulings made while these two witnesses testified. Specifically, he argues the court erred by "sustain[ing] hearsay objections and str[iking] testimony about republication of Sareen's defamatory statements concerning Stenehjem being violent and assaulting a female coworker. [Record citation.] . . . The trial court ordered Stenehjem's counsel not to ask about defamation republication. [Record citation.]" Stenehjem contends the evidence was offered not for the truth of what was stated but "as evidence of defamation and its republication." He argues further: "Workplace chatter about . . . coworker violence was foreseeable, yet the trial court sustained objections to that testimony, ordered it stricken, and issued an order not to mention it. [Record citation.]"[7]

The record shows that Stenehjem's counsel asked Stokes what he had heard about Stenehjem's departure from Akon and whether he had ever heard that Stenehjem had struck Hanh. Defense counsel objected to both questions; the first question was specifically objected to on hearsay grounds. The court sustained the objections, engaging in unreported sidebar conferences with counsel after each ruling. Stokes was then asked

---

[7] Stenehjem also stated in his opening brief: "The trial court also sustained objections to questions about profane sexual remarks made by others at Akon. [Citation.]" His citation to the record is to pages in which the court sustained objections to several questions by Stenehjem's counsel to Stokes about having heard anyone at Akon talking about other employees' sex lives and the like. Although mentioned in his brief, Stenehjem presents no argument that the court committed error in excluding this testimony. He has therefore forfeited any challenge to that testimony. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [appellate arguments "neither timely nor fully made" deemed forfeited].)

whether "anyone at [Akon had] ever told [Stokes] about [Stenehjem's] departure." The court permitted the question and the follow-up question of identifying the person who spoke to Stokes on the subject. Stokes responded that it was Tuccori. Although no question was then pending, defense counsel interposed the following: "Your Honor, if we're going to hear from Mr. Tuccori, I think that's the appropriate way to hear this." The court then ruled, "Sustained, on those grounds." There is nothing in the record indicating that Stenehjem's counsel made an offer of proof or presented specific argument to the trial court regarding the admissibility of the proposed testimony by Stokes.

Stenehjem's counsel asked Tuccori, as "a simple yes or no question," whether he had told anyone the reason he believed Stenehjem's employment had been terminated by Akon. Tuccori responded: "[I]t's been almost two years ago [*sic*]. I really can't remember. I may have." As to whether he spoke to Stokes about Stenehjem's termination, Tuccori testified: "Yeah. I may have, yeah. I'm sure we did at one time or another, yeah. I think it was a common thing like to say, hey, Jerry is gone, . . . he was terminated, and . . . such and such. I think it's possible. I don't know . . ." In response to counsel for Stenehjem's follow-up question as to whether he "also mention[ed] why [Stenehjem] was fired," Tuccori testified: "Yeah. I probably would have. Yeah. I would have mentioned it." After this answer, at the request of Stenehjem's counsel, the trial court had an unreported sidebar conference with counsel. After the conference, Tuccori was asked by Stenehjem's counsel about other matters. As was the case with Stokes, there is no record of Stenehjem's counsel having made an offer of proof or having presented specific argument regarding the admissibility of the Tuccori's proposed testimony.

### 2. *There Was No Error*

Stenehjem's claim of error relating to the trial court's evidentiary rulings during Stokes' and Tuccori's testimonies is without merit. First, the foundation for the claim is

19

entirely lacking.  Although it is assumed by Stenehjem in his argument before us that the two witnesses had a conversation in which Tuccori told Stokes that Stenehjem was fired for assaulting an employee—what Stenehjem terms the "republication of Sareen's allegedly defamatory statements concerning Stenehjem being violent and [having] assault[ed] a female coworker"—the record does not show that either witness would have so testified.  There was no offer of proof concerning this proposed "republication" testimony by Stenehjem.  Appellate courts do not decide hypothetical or theoretical controversies.  (See *In re Joshua S.* (2007) 41 Cal.4th 261, 273 [courts do not " 'issu[e] purely advisory opinions, or consider[] a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute' "].)

Second, there is no record that Stenehjem presented argument to the trial court consistent with his position here concerning the claimed admissibility of the evidence.  Indeed, there is no argument by Stenehjem's counsel at all concerning the admissibility of the assumed conversation between Tuccori and Stokes.  Stenehjem's claim of error therefore fails due to the absence of an offer of proof or a record that he asserted the basis for the admissibility of the evidence to the trial court as required under Evidence Code section 354.  (*Shaw*, *supra*, 170 Cal.App.4th at pp. 282-283.)

Stenehjem's claim of error also fails because he has not shown prejudice.  Prejudice is not presumed, and the party claiming error must affirmatively demonstrate that the alleged error resulted in a miscarriage of justice.  (*Century Sur. Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963; Cal. Const., art. VI, § 13; Evid. Code, § 354.)  Here, Stenehjem makes the most conclusory of arguments regarding prejudice:  "These rulings unconstitutionally prevented Stenehjem from proving his case.  The rulings were also erroneous and prejudiced Appellant by eliminating his evidence of defamation republication."  This argument is inadequate in making a showing of prejudice.  (See *People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8 [appellate courts will not consider perfunctory contentions unsupported by any argument].)  Moreover, even if Stenehjem

20

had presented something more than a cursory argument regarding prejudice, the contention would nonetheless fail. Prejudice can only be evaluated from a consideration of the entire record at trial. The party challenging a ruling by the trial court has the burden of showing reversible error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).) Here, Stenehjem has provided only a very limited record of the trial proceedings by including reporter's transcripts of the testimony of Stokes, Tuccori, and DuVall. This is only a small part of the trial record.[8] Accordingly, Stenehjem has failed to present an adequate record from which we could evaluate his claim that any ruling by the trial court was prejudicial.

### D. Ruling on Special Verdict Form

On December 6, 2012, the court held a conference with counsel concerning proposed jury instructions and special verdict forms. One issue discussed was Stenehjem's proposed special verdict form on his third cause of action for discrimination under FEHA that he had submitted before trial. The form, which was based upon a former version of California Civil Jury Instruction (CACI) No. 2500, included the following question: "Was Jerome Stenehjem's sex or gender a motivating reason for Akon Incorporated's discharge?" After brief argument, the court elected to provide the jury with a different special verdict form that contained, among other questions, the following: "Has Plaintiff Jerome Stenehjem established by a preponderance of the

---

[8] There was additional trial testimony included in reporter's transcripts produced at Stenehjem's request in the separate appeal from the postjudgment attorney fee order (see fn. 2, *ante*). But based upon the clerk's minutes of the trial, there was testimony from seven witnesses, as well as additional testimony from Stenehjem and Sareen, for which no reporter's transcripts in either appeal were provided. We have obtained the clerk's minutes from the Superior Court and hereby take judicial notice of them (see Evid. Code, § 459, subd. (a)).

evidence that Defendant AKON Inc. discriminated against Plaintiff Stenehjem on the basis of gender?"**⁹**

Stenehjem argues the court's use of the special verdict form in lieu of the one he proposed was error because "the verdict form incorrectly sought only a legal conclusion on 'discrimination,' and omitted the elements of a disparate treatment claim. [Record citation.] By removing the element of gender as a motivating factor, as well as the issue of plaintiff's termination, from the special verdict form, and substituting a bald conclusion on discrimination, the trial court assured that the jury's special verdict would be without legal significance. It left the special verdict hopelessly uncertain. It precluded anyone from knowing whether the jury found gender was a substantial motivating reason in Appellant's termination." He argues further that "the special verdict was confusing and misleading, particularly in light of the fact that the jury instructions were specifically written in terms of gender as a substantial motivating factor in discharge. [Record citation.] The jury answered the truncated verdict form question, 'No.' But the answer was meaningless; it did not reveal whether the jury found that Stenehjem's gender was found to be a substantial motivating reason in his termination."

As noted earlier, a trial court is not required to submit a special verdict form to the jury. (*Gherman*, *supra*, 72 Cal.App.3d at p. 590; Code Civ. Proc., § 625.) And the court's decision on whether to submit a special findings request to the jury will be reversed only in the case of "a clear abuse of discretion. [Citation.]" (*Red Mountain, LLC. v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 364 (*Red Mountain*); see also *Gherman*, at p. 590.)

---

**⁹** Stenehjem asserts the special verdict form ultimately given was one that had been proposed by Defendants. The record submitted in this appeal neither confirms nor refutes this assertion.

22

The trial court correctly recognized the discretion vested in it under Code of Civil Procedure section 625. It noted it was not required to use a special verdict form at all, but it felt that a special verdict in some form was "more appropriate" here. It observed further that Stenehjem's proposed special verdict form included requested findings on several matters that were conceded, such as whether Akon was an employer, and whether Stenehjem was an Akon employee. The court indicated that it felt it was inappropriate to require the jury to make special findings as to such conceded matters. Thus, the court properly exercised its discretion in rejecting Stenehjem's proposed special verdict form based upon its inclusion of unnecessary proposed findings.

Additionally, Stenehjem's proposed special verdict form was not an accurate statement of the law. At the time of trial (December 2012), the law concerning mixed motive discrimination cases—which impacted the proper wording of CACI No. 2500—was unsettled. The wording of the instruction at that time was that a plaintiff was required to prove, as one of the elements of employment discrimination under the FEHA, that the plaintiff's protected status (here, gender) "was a motivating reason for the" adverse employment action. (Former CACI No. 2500 (2012 ed.).) The trial court noted during its conference with counsel that the issue of whether the proper test was "a motivating reason" or "a substantial motivating reason" was pending before the California Supreme Court. It determined, over Stenehjem's objection, that the latter test applied and modified the then-existing language of CACI 2500 accordingly. The language of the instruction given to the jury read: "That Plaintiff Stenehjem's sex was a substantial motivating reason for AKON Inc.'s decision to discharge him."

Two months after the trial in this case, the Supreme Court held that a jury, in deciding a mixed motive FEHA case based upon an employee's termination due to alleged pregnancy discrimination, should have been instructed to determine whether the plaintiff's protected status "was 'a substantial motivating factor/reason' " for the plaintiff's discharge, rather than " 'a motivating factor/reason,' " as then extant under

23

CACI No. 2500. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232.) Therefore, had the trial court here adopted the "motivating reason" language contained in Stenehjem's proposed special verdict form, it would have committed error.

We also conclude that the trial court did not err when it refused to give Stenehjem's proposed special verdict form and instead submitted a special verdict form that contained more general language regarding discrimination. Stenehjem's contention that the trial court's action resulted in uncertainty with the special verdict and a failure to advise the jury concerning the elements of a disparate treatment claim ignores a critical fact: The court properly instructed the jury regarding each of the required elements of Stenehjem's FEHA claim. It gave an introductory instruction that was patterned after BAJI 12.00, in which the jury was apprised that Stenehjem sought damages under the FEHA for discrimination because Akon allegedly terminated him based upon his gender. The court further instructed the jury that in order for Stenehjem to prevail on this claim, he was required to prove that (1) Akon discharged him, (2) his sex was a substantial motivating reason for its decision to discharge him, (3) he was harmed, and (4) Akon's conduct was a substantial factor in causing his harm. Stenehjem does not contend that these instructions were erroneous. Therefore, "[a]bsent some contrary indication in the record, we presume the jury follows its instructions [citation] 'and that its verdict reflects the legal limitations those instructions imposed' [citation]." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804; see also *Red Mountain*, *supra*, 143 Cal.App.4th at pp. 364-365 [no prejudice shown in court's providing special interrogatories to jury, where jury was given proper instructions; it was presumed that jury followed its instructions].)

Finally, even were we to agree with Stenehjem that the court erred in refusing his special verdict form relative to his FEHA claim, Stenehjem has failed to show that any assumed error was prejudicial. Indeed the record is bereft of *any of the evidence* presented in support of, and in opposition to, Stenehjem's FEHA discrimination claim.

24

(See *Pringle*, *supra*, 73 Cal.App.4th at p. 1003 [appellate challenge to trial court's rejection of special jury instruction failed where appellant did not present an adequate record to evaluate merits of claim].)[10]

DISPOSITION

The judgment is affirmed.

---

[10] Stenehjem cites to excerpts from Sareen's deposition (attached to his opposition to the summary judgment motion) in support of his claim of prejudice. There is nothing in the record indicating that this deposition testimony was provided to the jury in its consideration of Stenehjem's FEHA discrimination claim. It therefore has no bearing on whether the trial court committed prejudicial error in rejecting Stenehjem's proposed special verdict form.

_____
                       Márquez, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
        Grover, J.