Filed 11/3/15  Apple v. Davis CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROBERT M. APPLE, | B258829 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC501418) |
| v. | |
| VINCENT W. DAVIS et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan G. Bruguera, Judge.  Affirmed.

Law Offices of Vincent W. Davis & Associates, Jessie M. Mahn and Aihui Su for Defendants and Appellants.

Blumberg Law Corporation, John P. Blumberg and Ave Buchwald for Plaintiff and Respondent.

_____

Defendants Vincent W. Davis, Robert M. Granieri and Carol A. Baidas, attorneys from the Law Offices of Vincent W. Davis & Associates (collectively as Davis), appeal from an order denying their special motions[1] to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] This appeal concerns the second step of the two-part anti-SLAPP analysis; whether plaintiff, Robert M. Apple, demonstrated a probability of prevailing on his claim, here, of malicious prosecution. We conclude the trial court ruled correctly for Apple. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

*The Fatal Auto Accident*

The instant case stems from a tragic event that took the life of Miguel Valenzuela (decedent) who was killed in a traffic accident on Interstate Route 80 in Landers County, Nevada. On June 6, 2006, the decedent, along with two passengers, were struck from behind by a truck driven by an agent of Swift Transportations Inc. (Swift). The force of the impact took the life of all three.

The decedent left behind children from different mothers.[3] Pertinent to our case are decedent's five children with Maria Acuna.[4]

---

[1]     Each defendant filed identical but separate motions.

[2]     SLAPP is the acronym for strategic lawsuit against public participation. All further undesignated statutory references are to the Code of Civil Procedure.

[3]     The decedent was previously married in Mexico and was survived by three children from that marriage.

[4]     The decedent was not legally married to Maria Acuna. The name of the decedent's children with Acuna are Maria Magdalena Valenzuela (Magdalena), Nathalie Noemi Valenzuela, Violet April Valenzuela, Angel Felipe Valenzuela and Tanya Valenzuela.

*The Settlement of Claims*

Several days after the accident, Acuna sought legal assistance from David K. Porter at the law firm of Caldwell, Kennedy & Porter (collectively as Porter). Porter was retained by each child in a potential wrongful death action against Swift.[5] Porter is licensed to practice in the state of California but not in Nevada where the accident occurred. Porter associated Apple, who is a licensed attorney in the State of Nevada, to assist in representing the children.[6]

Before filing a lawsuit, Porter and Apple attempted to mediate a settlement on behalf of the five children. Swift agreed and a mediation occurred on September 6, 2006, in Las Vegas, Nevada. The mediation also involved other claimants including the decedent's other children from Mexico and the mother of the two passengers that were also killed. Ultimately, Swift settled the accident for a total of about $2.5 million, of which $920,000 went to Acuna's five children in equal portions.

*The Legal Malpractice Suit*

On November 12, 2009, Davis, on behalf of one of Acuna's children,[7] filed a complaint against Porter and Apple alleging four causes of action: (1) legal malpractice, (2) breach of contract, (3) breach of fiduciary duty, and (4) intentional misrepresentation.[8] Davis alleged "inadequate and inferior representation . . . , which resulted in . . . a ridiculously low settlement."

On August 9, 2010, Davis filed the first amended complaint to add an additional cause of action and five additional plaintiffs. It added a new second cause of action for

---

[5]    Lalaine Giana Mia Valenzuela (Lalaine) is Magdalena's daughter, and the granddaughter of the decedent. Lalaine, who at the time was three years old, was at the initial meeting with Porter but was not included as a potential claimant.

[6]    Apple's law firm is called Robert M. Apple & Associates, located in Las Vegas, Nevada.

[7]    The only plaintiff named in the initial pleading was Magdalena.

[8]    Davis filed the case with the Superior Court of the County of San Bernardino, case No. CIV VS 907429.

legal malpractice on behalf of Lalaine.  The amended complaint also added Nathalie Noemi Valenzuela, Violet April Valenzuela, Angel Felipe Valenzuela and Tanya Valenzuela as additional plaintiffs to the preexisting four causes of action.

Magdalena's Deposition

On January 26, 2011, Porter took the deposition of Lalaine's mother, Magdalena. She gave the following answers:

"Q.    How long was it that you resided in West Jordon with Miguel Valenzuela?

"A.    I don't know.

"Q.    Was it less than a month?

"A.    Yes.  [¶]  . . .  [¶]

"Q.    Did you spend Thanksgiving of 2005 at West Jordan, Utah?

"A.    I don't remember.

"Q.    Okay.  Did you spend Christmas in West Jordan?

"A.    Yes.

"Q.    Okay.  So the month was approximately December 2005?

"A.    Uh-huh.

"THE REPORTER:  Is that 'yes'?

"THE DEPONENT:  Yes.  [¶]  . . .  [¶]

"Q.    Prior to the December in Utah, when was the last time before that that you had resided with your father?

"A.    Can you repeat the question, please?

"Q.    Sure.  Prior to the December in Utah, when was the last time prior to that that you had resided with your father?

"A.    I don't remember."  (Boldface omitted.)

Davis's Settlement Offer

On May 9, 2011, Davis made a settlement offer pursuant to section 998 for $750,000. The offer included Lalaine's cause of action, which, if accepted would have been dismissed with prejudice. Porter and Apple rejected the offer and proceeded to trial.

Motions In Limine

On February 22, 2012, on the eve of trial, motions in limine were conducted. According to Davis, the trial court handled a total of 18 motions, some filed by Davis, others by Porter and Apple.

On the motion in limine to preclude mention of Lalaine's claim, the following occurred:

"[THE COURT:] Number 4 is Defendant Porter and Caldwell, Kennedy and Porter's Motion in Limine to preclude any and all mention of Lalaine Valenzuela's claim. And I don't remember getting any opposition to that. [¶] Did I get any opposition, written opposition?

"[DAVIS:] You did not.

"THE COURT: Is there any oral opposition to it this afternoon?

"[DAVIS:] No.

"THE COURT: It is granted.

"[PORTER:] Your Honor, I presume that means Lalaine is being dismissed from the case?

"[DAVIS:] Yes.

"THE COURT: Are you moving to dismiss Lalaine Valenzuela at this point in time, sir?

"[DAVIS:] Yes.

"THE COURT: That motion is granted. That plaintiff will be dismissed from this matter."

5

At the conclusion of the hearing, the trial court discussed the filing of a motion for a nonsuit, "or some kind of a motion to preclude" causes of action. Based on the parties' scheduling needs, the trial was continued to March 26, 2012.

Before the parties reassembled for trial, Davis filed a request to voluntarily dismiss the complaint without prejudice on March 19, 2012. The dismissal was entered on the same date. Apple filed a motion to enter the dismissal with prejudice. The trial court granted the request. Notice of order and entry of judgment of dismissal with prejudice was posted on August 22, 2012.

*The Malicious Prosecution Suit*

On February 20, 2013, Apple filed the instant complaint for malicious prosecution against Davis.[9] On April 25, 2013, Davis (Davis, Granieri and Baidas each as defendants) filed an anti-SLAPP special motion to strike the complaint. Apple filed an opposition to each anti-SLAPP motion.

The trial court tentatively ruled for Davis to grant the anti-SLAPP motions. On June 19, 2014, the trial court conducted the hearing on the motion and took the matter under submission. On August 28, 2014, the trial court filed a notice of an order issued on July 28, 2014, reversing its tentative and denying Davis's anti-SLAPP motions. The July 28, 2014 order was incorporated by reference.

In general terms, the trial court's order denying Davis's anti-SLAPP motions separated the analysis into two categories: (1) the second cause of action for legal malpractice by Lalaine, and (2) the remaining causes of action by Acuna's children. The trial court's separate analysis was based on Apple's assertion of different grounds for finding lack of probable cause. As for Lalaine's cause of action, Apple argued, inter alia, Lalaine lacked standing pursuant to section 377.60, subdivision (c), to bring a wrongful

---

**9** As we understand, Porter was insured and therefore did not join in the suit.

6

death action because she had not resided with the decedent for the requisite 180 days.[10] For the remaining causes of action, Apple argued, the mediation privilege eradicated probable cause.[11] Apple asserted, since no evidence of communications that occurred during the mediation was discoverable or admissible, Davis no longer had probable cause to continue prosecuting the case. The trial court adopted these arguments in its order denying the anti-SLAPP motion.

Davis filed a timely notice of appeal.

## DISCUSSION

### I.      *Contentions on Appeal*

#### A.      *Apple's Contention on Jurisdiction*

Apple questions our jurisdiction to determine this appeal. He claims the notice of appeal is defective as it misidentified the date the denial order was issued.[12] We disagree.

California Rules of Court, rule 8.100(a)(2) states, "The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed. The notice need not specify the court to which the appeal is taken; the appeal will be treated as taken to the Court of Appeal for the district in which the superior court is located." In *Wilson v. Union Iron Works Dry Dock Co.* (1914) 167 Cal.

[10]      Section 377.60 prescribes standing to bring a wrongful death action. As applicable here, subdivision (c) provides, "A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support."

[11]      On January 13, 2011, the California Supreme Court published *Cassel v. Superior Court* (2011) 51 Cal.4th 113 (*Cassel*) and explained the scope of California's mediation confidentiality statutes. In short, the court held attorneys' mediation-related discussions with their clients were confidential thus not discoverable nor admissible in a legal malpractice suit. (*Id.* at p. 135.)

[12]      After taking the motion under submission on June 19, 2014, the trial court issued the denial order in-chambers on July 28, 2014. It then posted the notice of the entry of judgment on August 28, 2014.

7

539 (*Wilson*), the court held a defect in the notice of appeal identifying the date of judgment appealed from "does not invalidate the appeal, [if] it clearly appears that but one such judgment was ever entered in the case." (*Id*. at p. 541.)

In the instant case, there is but one appealable order issued by the trial court, the order denying Davis's anti-SLAPP motions. Indeed, the notice of the entry of judgment on August 28, 2014, identifies the July 28, 2014 denial order. As *Wilson* noted, it is clear there is but one judgment that was entered that triggered this appeal—the denial of the anti-SLAPP motions. We liberally construe the notices of appeal filed by Davis and find this appeal is properly before us.

### B.      *Davis's Contentions*

Davis contends Apple failed to establish (1) favorable termination, (2) lack of probable cause, and (3) malice, for any of the five causes of action in the legal malpractice suit.

Regarding Lalaine's cause of action, Davis first argues Apple's complaint "does not allege this as a basis for his claims for malicious prosecution." On Apple's claim Lalaine lacked standing under section 377.60, Davis asserts, "[section 377.60, subdivision (a)] provides that a cause of action for wrongful death may be asserted by the persons, 'who would be entitled to the property of the decedent by intestate succession.' " Furthermore, Davis claims the evidence on lack of standing is insufficient as Magdalena (Lalaine's mother) never explicitly testified at the deposition Lalaine did not live with the decedent for the requisite time period.

Regarding Apple's claim Davis lacked probable cause to continue prosecuting the other four causes of action after *Cassel*'s publication, Davis contends they performed "arduous research" and concluded "while *Cassel* may exclude some of their evidence . . . , it certainly did not exclude non-communicative evidence, and would not restrict evidence that [Davis] believed fell outside the mediation privilege parameters."

## II. *Anti-SLAPP Statute: Two-step Procedure*

The anti-SLAPP statute authorizes a two-step procedure for striking a cause of action at the earlier stages of litigation when it is established that the cause of action was filed to "chill" the defendant's constitutional rights of free speech and/or to petition the government. (§ 425.16, subds. (a) & (b).) In the first step, the court determines whether the moving defendant has shown that a cause of action arises from "protected activity," i.e., from an act in furtherance of the defendant's constitutional right to petition or free speech as defined in the anti-SLAPP statute. (§ 426.16, subds. (b)(1) & (e).)

If the defendant carries this burden, the court then undertakes a second step analysis in which it examines the evidence to determine whether the plaintiff has demonstrated a probability of prevailing on his cause of action on the merits. (§ 425.16. subd. (b)(1); and see, e.g., *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) "In the second step, . . . plaintiff must state and substantiate a legally sufficient claim [citation], thereby demonstrating his case has at least minimal merit [citation]." (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 211.)

The standard for reviewing an appeal from an order granting or denying a motion to strike under section 425.16, is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) When considering the pleadings and supporting and opposing declarations, we do not make credibility determinations or compare the weight of the evidence. Instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Ibid.*)

### A. *Malicious Prosecution*

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup, supra*, 39 Cal.4th p. 292.)

9

"A claim for malicious prosecution may also apply to a defendant who has brought an action charging multiple grounds of liability when some, but not all, of the grounds were asserted without probable cause and with malice." (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*).) "Malicious prosecution . . . includes continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.) "Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset." (*Id.* at p. 969.)

### (1)  First Step

Apple concedes Davis's conduct in filing a malpractice lawsuit constitutes protected activity under the anti-SLAPP statute.[13]  Thus, the only question to be resolved in this appeal relates to the second step—whether Apple produced sufficient evidence of minimal merit to satisfy the burden of showing probability of prevailing on the malicious prosecution cause of action.

### (2)  Second Step

In order to prevail on the second step, Apple is not required to prove the elements of malicious prosecution (favorable termination, lack of probable cause, and malice) on each of the five causes of action Davis filed.  As stated in *Sycamore Ridge*, where, as here, Davis filed multiple causes of action, proving the elements on any one is sufficient.  Additionally, Apple is not required to prove Davis lacked probable cause when the causes of action were initially filed.  Instead, he may prove that during the time the lawsuit was being prosecuted, Davis became aware of facts, that from an objective standard, rendered a cause of action legally untenable.

---

[13]  In the respondent's brief, Apple wrote, "respondent did not contend otherwise in the trial court and does not otherwise contend now."

10

In the underlying legal malpractice suit brought on behalf of Acuna's children and Lalaine, Davis filed five causes of action against Porter and Apple. Apple is required to show probability of success on at least one cause of action. Reviewing the evidence, Apple has done so regarding malicious prosecution for Lalaine's cause of action. Accordingly, we need not determine whether Apple sustained his burden on the remaining four causes of action.

### B.      Pleading Is Legally Sufficient

For the first time on appeal, Davis argues Apple's complaint did not specifically allege Lalaine's cause of action was maliciously prosecuted. Davis claims "[s]uch allegation is insufficient to prove that Lalaine's cause of action in the underlying case was maliciously prosecuted."

The focus of the anti-SLAPP motion is on admissible evidence. In order to prevail on the second step, "plaintiff cannot rely on his pleading . . . even if verified, to demonstrate a probability of success on the merits." (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 474.) "In the second prong of the anti-SLAPP analysis, the court must determine whether the plaintiff has shown, by admissible evidence, a probability of prevailing on the claim." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1195.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment *if the evidence submitted by the plaintiff is credited.*' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, italics added, superseded by statute on other ground as noted in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.) Like a summary judgment motion, the decision to grant or deny the anti-SLAPP motion is based on the evidence submitted by the parties.

The legislative purpose behind section 425.16 is to unmask SLAPP actions " ' "masquerad[ing] as ordinary lawsuits." ' " (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927.) "[W]hen the plaintiff demonstrates a probability of prevailing on the merits, his or her complaint is not a

11

SLAPP. With nothing to unmask, the policy concerns implicated by the anti-SLAPP statute dissipate, and the action proceeds as an ordinary lawsuit." (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 871.) Unlike a demurrer which tests the legal sufficiency of factual allegations in a complaint and is subject to amendments, the purpose behind the anti-SLAPP motion is to ferret out unmeritorious lawsuits meant to stifle the exercise of the defendant's constitutional rights to petition or free speech and resolves the case on the merits.

In the trial court, Davis never raised this procedural question. Instead, they substantively contested this specific claim on the merits. While we recognize our review is de novo, it is clear Davis was on notice of this specific claim and vigorously fought the issue in the trial court. Indeed, the issue is not new—Lalaine's potential lack of standing was raised at the time of the motions in limine on February 22, 2012. In the end, contrary to Davis's contention, Apple is not resting on the pleading to prove his prima facie case—as noted earlier, he may not do so. Instead, he presented evidence to support his burden.[14] We find Apple's complaint is legally sufficient to assert Lalaine's claim.

### C.    *Favorable Termination*

"It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 845.) " '[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record "to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." ' " (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 198.) "Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact." (*Ibid*.) "The theory underlying the requirement of favorable termination is that it

---

[14]    Within the trial court's July 28, 2014 order denying the anti-SLAPP motion, page 7 sets forth the evidence submitted by Apple and Davis.

tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution]." (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150.)

"A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury." (*Weaver v. Superior Court* (1979) 95 Cal.App.3d 166, 185, disapproved on other grounds in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882.) "The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted." (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827.)

At the motions in limine on February 22, 2012, Porter asked the trial court to preclude mention of Lalaine's claim to the jury during the trial. When asked by the trial court whether Davis opposed, Davis answered in the negative. Immediately thereafter, Davis dismissed Lalaine's claim.

Our review of this motion in limine shows Porter argued, inter alia, Lalaine did not have standing because she had not lived with the decedent for the 180 days prior to his death under section 377.60, subdivision (c). Apple asserts the dismissal after submitting on the motion in limine is prima facie proof of favorable termination. We agree. Nothing in the record suggests Davis was unaware of the arguments raised in Porter's motion in limine. Indeed, the inference is to the contrary. The record reveals a knowing submission on the issues raised and an immediate subsequent dismissal of the cause of action. Such a voluntary dismissal tends to indicate the innocence of the accused.

### D.     *Lack of Probable Cause*

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must 'determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' [Citation.] 'The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted. [Citation.]' [Citation.] The test the

13

court is to apply is whether 'any reasonable attorney would have thought the claim tenable . . . .' [Citation.] The tort of malicious prosecution also includes the act of 'continuing to prosecute a lawsuit discovered to lack probable cause.' [Citation.] In determining the probable cause issue, the same standard applies 'to the continuation as to the initiation of a suit.' " (*Sycamore Ridge, supra*, 157 Cal.App.4th at p. 1402.)

A litigant lacks probable cause if he relies on facts which he has no reasonable cause to believe is true, or, if he seeks recovery upon a legal theory which is untenable under the facts known to him. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164-165.) In making this assessment, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. [Citations.] The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 (*HMS Capital*).)

Section 377.60 establishes categories of persons with standing to bring a wrongful death action.[15] Lalaine is the granddaughter of the decedent. Magdalena, her mother, is

---

[15]   Section 377.60 states in pertinent part:

"A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

"(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

"(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

the daughter of the decedent.  Accordingly, in order to qualify for standing, Lalaine must meet the requirements of section 377.60, subdivision (c)—to have resided with the decedent for the 180 days prior to his death and to have depended for one-half of her support from the decedent.

When Magdalena was deposed on January 26, 2011, she testified to last having lived with the decedent for about a month or so in December of 2005.  The decedent's accident occurred in June of 2006, approximately six months later.  Apple points to this evidence as support for his position Davis lacked probable cause.  The argument does not posit Davis necessarily lacked probable cause when they amended the complaint to add Lalaine as a plaintiff which occurred on August 9, 2010.  Magdalena's deposition was yet to be taken.  Instead, Apple argues, after the deposition, having learned of Lalaine's mother's testimony, Davis continued to prosecute Lalaine's cause of action without probable cause.

Davis counters Magdalena never testified Lalaine did not live with the decedent for the 180 days prior to his death.  As such, he argues Apple's argument rests on "large inferences and assumptions."  The question is whether circumstantial evidence supports Apple's position.

At the time of the decedent's accident, Lalaine was about three years old. Magdalena testified she lived with the decedent for approximately a month in December of 2005, about six months before the accident.  It is reasonable to infer a child of about three years old normally lives with her mother.  Davis adduced no contrary evidence. From this set of facts, a reasonable inference is established Lalaine lived with her mother

---

"(c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support.

"(d) This section applies to any cause of action arising on or after January 1, 1993."

15

and had not lived with the decedent for the required period of time under section 377.60, subdivision (c).**16**

Davis also asserts Lalaine had standing under section 377.60, subdivision (a), because the "statute provides that a cause of action for wrongful death may be asserted by the persons, 'who would be entitled to the property of the decedent by intestate succession.' " We read section 377.60, subdivision (a), differently. Davis ignores the qualifying clause, "if there is no surviving issue of the decedent," which precedes those conferred with standing—"persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." (§ 377.60, subd. (a).) Here, the surviving issues are the children of the decedent, including Lalaine's mother, Magdalena. Since all were still alive, the provision to which Davis points does not apply.

*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433 (*Chavez*) is in accord. *Chavez* involved a wrongful death action brought by the parents of a decedent killed by a drunk driver. Counsel for the drunk driver argued the parents lacked standing to sue because at the time of the death, the decedent was survived by a child. The appellate court agreed and found the parents did not have standing under section 377.60, subdivision (a).

The *Chavez* court explained, "[t]he first subdivision of the wrongful death statute gives standing to those persons 'who would be entitled to the property of the decedent by intestate succession,' but only 'if there is no surviving issue of the decedent.' [Citation.] Under the laws of intestate succession, a decedent's parents become heirs where there is no surviving issue. [Citation.] But where a decedent leaves issue, 'his parents would not be his heirs at all [citations] and therefore not entitled to maintain this [wrongful death]

---

**16** Davis also argued ambiguity in the testimony about when Magdalena last lived with the decedent because "in response to when was the last time they lived with her father Miguel, [Magdalena] responds 'I don't remember.' " Davis misreads the testimony. The question was not when they (Magdalena and Lalaine) had lived with the decedent (implying before the accident), but instead, "Prior to the *December* in Utah, when was the last time prior to that that you had resided with your father?" (Italics added.)

action at all.' [Citations.] [¶] The question before us is whether [the child] was decedent's surviving issue. If so, she is the only proper plaintiff under this subdivision. If not, appellants are proper plaintiffs, with standing to sue for their son's wrongful death." (*Chavez, supra*, 91 Cal.App.4th at p. 1440.)

While the relationship of the potential plaintiff to the decedent in *Chavez* and the instant case differ, the rule of law is identical. If the decedent is survived by an issue, the parents in *Chavez*, and the grandchild here, are not proper plaintiffs. In the instant case, the decedent was survived by issues including Lalaine's mother, Magdalena. Thus, Lalaine did not have standing to bring suit under section 377.60, subdivision (a).

Accepting as true the evidence in Apple's favor, we conclude Apple has met his burden of showing lack of probable cause—that a reasonable attorney would not have thought Lalaine's claim tenable after her mother's deposition.


### E.   *Malice*

The last issue is whether Apple made an adequate showing Davis continued to prosecute Lalaine's cause of action with malice.

"The malice element of the malicious prosecution tort goes to the defendant's subjective intent in initiating the prior action. [Citations.] It is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose. Suits with the hallmark of an improper purpose are those in which: ' ". . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." ' " (*Sierra Club Foundation* (1999) 72 Cal.App.4th 1135, 1156-1157.) To put it differently, "[t]he motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some

17

personal or financial purpose." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494.)

Apple claims, after Magdalena's deposition, Davis should have dismissed Lalaine's cause of action. Apple argues, "Instead, [Davis] continued to prosecute all causes of action. [He] served a section 998 settlement offer of $750,000 on May 9, 2011." Citing *HMS Capital*, Apple contends the continued prosecution after the deposition and the settlement offer to resolve all Davis's causes of action constitutes evidence of malice.

Davis counters the proof of malice cannot be inferred from a lack of probable cause. Citing *Roger Cleveland Golf Co. Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660 (*Roger Cleveland*), he contends the court held "even when an attorney makes an unreasonable settlement demand, irrespective of the facts of the case, no inference of malice can be drawn from that alone."

In *Roger Cleveland*, the question presented was whether the plaintiff's evidence regarding malice was sufficient to overcome his burden. The evidence consisted of a declaration from plaintiff that in response to the comment that the case was frivolous and that it ought to be dismissed, defendant stated, " ' "That may be true, but all I have to do is get the case to a jury." ' " (*Roger Cleveland, supra*, 225 Cal.App.4th at p. 688.)

In analyzing the plaintiff's evidence on malice, the court stated, "[w]e conclude that based upon [defendant's] statement, [plaintiff] did not meet its minimal burden to show [defendant] acted with malice in filing or continuing to litigate . . . for an improper purpose. These comments were typical of comments attorneys make to one another during the course of litigation . . . . Therefore, no inference of malice can be drawn from [defendant's] statement even when viewed in the light most favorable to [plaintiff]." (*Roger Cleveland, supra*, 225 Cal.App.4th at p. 688, citation omitted.) In other words, the court did not make a universal rule applicable to all cases. Instead, the court analyzed the evidence and found it insufficient.

In the instant case, on August 9, 2010, Davis amended the initial complaint and added Lalaine as a plaintiff under a cause of action for legal malpractice. About five

18

months later, on January 26, 2011, Porter took the deposition of her mother, Magdalena. She testified as having last lived with the decedent in December of 2005, approximately six months prior to the decedent's accident. Instead of dismissing Lalaine's cause of action at that time, on May 9, 2011, Davis made an offer to settle the entire action, including Lalaine's cause of action, in exchange for the payment of $750,000. When the offer was rejected, Davis continued to prosecute Lalaine's cause of action until February 22, 2012. On that date, at the motion in limine, Davis summarily submitted to Porter's motion in limine to preclude mention of Lalaine's cause of action in the trial without any argument. Immediately thereafter, Davis moved to dismiss Lalaine's cause of action.

"Malice may be inferred from circumstantial evidence, such as the defendants' lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose. [Citation.] This additional proof may consist of evidence that the prior case was knowingly brought without probable cause or was brought to force a settlement unrelated to its merits." (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1114.)

Viewing the evidence in the light most favorable to Apple, we conclude Apple met his burden on the element of malice for the following reasons: (1) when confronted with the section 377.60 argument at the motion in limine, Davis, without raising a single argument, summarily submitted on the request to preclude mention of Lalaine's cause of action; (2) almost immediately, Davis moved to dismiss Lalaine's cause of action; (3) facts regarding Lalaine's lack of standing was obtained from her mother's deposition that occurred more than a year earlier; and (4) between the time the deposition was taken and the hearing on the motion in limine, Davis offered to settle Lalaine, as well as the other five plaintiffs' claims for $750,000.

From this evidence, Apple has established a circumstantial inference that Davis knew as early as January 26, 2011, that section 377.60 barred Lalaine's cause of action. Instead of dismissing her case, Davis continued to prosecute her claim and attempted to settle a claim he arguably knew was unmeritorious. When push came to shove and the

19

jury trial was around the corner, Davis summarily dismissed a claim they knew they could not prove.  On these set of facts, we conclude Apple has met the burden of showing probability of success that Lalaine's cause of action was maliciously prosecuted.

**DISPOSITION**

The trial court's order denying the special motion to strike pursuant to section 425.16 is affirmed.  Apple shall recover his costs on appeal.


OHTA, J.*

WE CONCUR:



BIGELOW, P. J.



RUBIN, J.

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.